In re Joseph and Marian DONOFRIO, Debtors.

FIRSTMARK ACCEPTANCE CORP., Plaintiff,

v.

Joseph DONOFRIO, Defendant.

Bankruptcy No. 81–0760.

United States Bankruptcy Court, N. D. Ohio, W. D.

March 18, 1982.

David L. Honold, Wasserman, Wasserman, Bryan & Landry, Toledo, Ohio, for plaintiff.

Robert A. Retske, Romanoff & Retske Co., L. P. A., Toledo, Ohio, for defendant-debtor.

MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

### FACTS

The Court finds the following facts:

1) On or about November 12, 1979, Plaintiff Firstmark Acceptance Corporation (hereafter Firstmark) loaned Ten Thousand Four Hundred Thirty-five and 78/100 Dollars ($10,435.78) plus interest to Defendant-Debtor Joseph Donofrio. This loan was evidenced by a promissory note signed by the Debtor. (Plaintiffs Trial Exhibit "A")

2) To secure the payment of this loan, the Debtor executed a security agreement and financing statement in favor of Firstmark wherein the Debtor granted to Firstmark a security interest in certain household goods as well as six (6) specific paintings of the Debtor. Also part of the loan transaction, Debtor Joseph Donofrio listed Firstmark as the loss payee of the six (6) paintings on his home owners insurance policy with Auto Owners Mutual through Brooks' Insurance Agency of Toledo, Ohio. (Plaintiff's Trial Exhibit "D") The paintings referred to are the following:

1. Clear Creek Crossing, Acrylic by Hobbs;
2. Stream with Boulders & Deer, Acrylic by Hobbs;
3. Laundry, Oil by Solozzi;
4. Ponte Veccaio & Broken Glass, Oil by Solazzi;
5. Old Men, Oil by Solazzi;
6. Landscape, Oil by Bolin; Field scene by Vaughn.

3) A financing statement covering these goods was recorded on November 20, 1979, in the Lucas County Recorder's Office, Toledo, Ohio, Number 294806, and with the office of the Secretary of State of Ohio.

4) The Debtor admitted at trial that in the Fall or Winter of 1980, he sold five (5) of these six (6) paintings to an unknown person without the knowledge or consent of Firstmark, either before or after the sale.

5) The Debtor does not now recall what he used the money for, however, he admitted that Firstmark received none of it.

6) The sale of these paintings occurred prior to one (1) year before the filing of the Debtor's petition in Bankruptcy on April 2, 1981.

7) Firstmark claims damages because of the loss of their collateral and subsequent Bankruptcy of the Debtors. The amount owed to Firstmark up to the date of filing the Petition in Bankruptcy was Nine Thousand Two Hundred Forty-three and 22/100 Dollars ($9,243.22).

### LAW

This Court has previously reviewed similar factual pattern in the context of Section 523(a)(6) of the Bankruptcy Code. *Ohio Citizens Trust Company v. Smith*, 11 B.R. 20 (Bkrtcy.N.D.Ohio 1981); *Beneficial Finance Company v. Obermeyer*, 12 B.R. 26 (Bkrtcy.) Adversary Case Number 81–0061, Related Case Number 80–01871.

In reviewing these facts, a determination must be made as to whether the Defendant's actions in selling these paintings constituted an injury which was willful and malicious.

As indicated in the *Smith* case, supra., *Collier On Bankruptcy*, discusses the definitions of willful and malicious. A malicious injury is defined as a wrongful injury and without just cause or excuse, thus excluding the necessity of personal ill will. Willful is defined as intentionally doing an act which necessarily produces harm. "Thus, the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception." *Collier On Bankruptcy*, Vol. 1A, Section 17.17, at 1653, 14th Ed. (1979).

The Debtor relies upon two arguments.

1) Because he did not read the security agreement before he signed it, the subsequent sale of the paintings could not have been willful and malicious.

2) The Debtor, not being well-versed in bookkeeping and business terminology did not understand the extent of the responsibilities associated with his signature on the security agreement.

This Court can not accept these weak excuses. The Debtor has been in the business field some twenty years, and has even owned his own businesses, five of which were named at this trial. In these businesses, he served either as President or Chairman of the Board. It was clear from the Debtor's testimony that he understood what was meant by the terms security agreement and collateral used as security. In fact, the Debtor has received numerous loans, both personal and business. He has owned real estate, and automobiles, and he fully understands the consequences of non-payment where secured collateral is involved.

The Debtor clearly offered these six paintings as collateral for his loan from Firstmark. The Debtor signed the security agreement which prohibited their sale or transfer without Firstmark's approval. The Debtor intentionally sold five of these paintings which were subject to the security agreement. The Debtor did not offer any of the proceeds of this sale to Firstmark. Firstmark was thereby injured in the respect that they lost control of five of the six paintings which were their collateral.

For the above reasons, it is

ORDERED that the debt to Firstmark in the amount of Nine Thousand Two Hundred Forty-three and 22/100 ($9,243.22) Dollars is hereby declared nondischargeable under Section 523(a)(6) of the Bankruptcy Code.

It is FURTHER ORDERED that a hearing will be held Wednesday, April 14, 1982, at 10:00 o'clock A.M., in Courtroom No. 2, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio, where evidence will be heard by the Court from both parties as

to the appraisal of the remaining painting in the possession of Firstmark. From this evidence, as well as viewing the painting, the Court will make a determination of its value which will then be subtracted from the amount owed Firstmark.

In so reaching these conclusions, the Court has considered all the evidence presented whether or not referred to specifically in the opinion above.

It is FURTHER ORDERED that service of this Order shall be made by the deputy clerk of this Court mailing copies of same to all parties in interest and counsel of record.