## In re NEW HAVEN RADIO, INC.
### Bankruptcy No. 5–81–00253.

United States Bankruptcy Court,
D. Connecticut.

March 31, 1982.

Daniel Meister, Norwalk, Conn., Trustee.

Irving H. Perlmutter, New Haven, Conn., for trustee.

Richard Belford, New Haven, Conn., Trustee in Case No. 5–81–00254.

Milford Fenster, Hall, Dickler, Lawler, Kent & Howley, New York City, for Capitol City Communications, Inc.

MEMORANDUM AND ORDER ON ADE-QUACY OF DISCLOSURE STATE-MENT OF ANTHONY R. MARTIN-TRIGONA (11 U.S.C. § 1125(a))[1]

ALAN H. W. SHIFF, Bankruptcy Judge.

## BACKGROUND

On October 16, 1981, Anthony R. Martin-Trigona (ARMT) filed a disclosure state-ment as the sole shareholder of the debtor. Because the disclosure statement contained certain objectionable claims, the trustee filed a motion to strike and on January 8, 1982, the Court granted the trustee's mo-tion. At the same time, the Court rejected ARMT's claim that he was entitled to file a disclosure statement as the sole stockholder of the debtor and advised ARMT that the debtor could only file a disclosure statement through a duly authorized agent.

It should be noted that when ARMT filed the October 16, 1981 disclosure statement, he was a debtor in a case under Chapter 11, filed in this district, *In re Martin-Trigona*, Case No. 5–81–254. Therefore, any legal or equitable interest he may have had in the stock of New Haven Radio, Inc. was proper-ty of the estate in his individual case which was being administered by a trustee. On January 22, 1982, *In re Martin-Trigona* was converted to a case under Chapter 7 which further diminished any right ARMT had with respect to the stock. Thus, ARMT not only lacked standing to exercise any rights, vis-a-vis, the stock of New Haven Radio, Inc., but even if he had such standing, he could not file a disclosure statement on behalf of the debtor unless he was the duly authorized agent of the debtor for that purpose. See *Daniel Meister, Trustee v. New Haven Radio, Inc.*, No. 5–81–0396 (Bankr.Ct.D.Conn. March 2, 1982).

On January 21, 1982, ARMT filed a dis-closure statement as the "duly authorized agent" of the debtor. That disclosure statement is defective for the reasons here-inafter set forth.

## II

## AUTHORITY OF ARMT TO FILE DISCLOSURE STATEMENT

As mentioned above, ARMT was specifi-cally told by the Court that the debtor could

---

1. No attorney appeared at the hearing on be-half of the debtor. Although Anthony R. Mar-tin-Trigona has claimed throughout these pro-ceedings that he and the debtor are entitled to the appointment of counsel, in his disclosure statement he refers to advice of counsel. Fur-thermore, in the plan he submitted on behalf of the debtor, he states, "Debtor has incurred le-gal fees to various attorneys in connection with this proceeding and proposes to retain some or all of these attorneys on a continuing basis to assist with finalization and implementation of the plan ..."

only file a plan through its duly authorized agent. ARMT's naked assertion of that status is not convincing, particularly since, at the time the disclosure statement was filed, ARMT was a federal prisoner.

In view of his status as a federal prisoner and the fact that trustees have been appointed and are the legal representatives of the debtor's estate and his individual estate, there must be some documentation to support ARMT's agency claim. There were, however, no corporate resolutions, minutes, correspondence or any other documents attached to the disclosure statement or filed independently to support or even suggest that ARMT was the "duly authorized agent" of the debtor for the purpose of filing a disclosure statement. In fact, the failure of ARMT to submit to a Rule 205 Examination intended to explore the corporate affairs of the debtor is the basis of civil contempt sanctions imposed upon ARMT by the Court on January 18, 1982. *In re Anthony R. Martin-Trigona, In re New Haven Radio, Inc.*, 16 B.R. 792 (Bkrtcy.Ct.D.Conn. 1982).

■ ARMT cannot, in this court of equity, hinder the trustee's inquiry into the corporate affairs of the debtor, which, inter alia, might provide some basis for his claim of authority to act on behalf of the debtor and then rest that claim on the vacuum thus created. Clearly, the remote, if any, interest ARMT has in the stock of New Haven Radio, Inc., is an insufficient basis for him to act as agent. In that regard, it should be noted that the trustee of his individual Chapter 7 case, who has all the legal and equitable rights to his New Haven Radio, Inc. stock, specifically stated in open court that he did not vote that stock or otherwise authorize ARMT to file a disclosure statement. The debtor's trustee in the instant case has made a similar observation. I therefore conclude that there is no credible evidence that ARMT is the "duly authorized agent" of the debtor for the purpose of filing a disclosure statement and accordingly find that ARMT had no standing to file the January 21, 1982 disclosure statement on behalf of the debtor.

## III

## ADEQUACY OF DISCLOSURE STATEMENT

Even if ARMT had the requisite authority to file the January 21, 1982 disclosure statement on behalf of the debtor, that statement is defective because it fails to provide adequate information.

■ Although there is no precise formula for the information to be provided, Code § 1125(a)(1) mandates that the disclosure statement must provide

"... information of the kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical, reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."

It is obvious that the adequate disclosure requirement in Code § 1125(a)(1) contemplates not only sufficient information about the plan but also that the plan, which is being described, have sufficient depth so that the disclosure statement provides the "hypothetical investor" with the kind of information to evaluate the risk of acceptance of the plan. Otherwise, a detailed disclosure of a deceptive plan might survive a disclosure statement hearing, and that was not the intent of Congress. Court approval of the disclosure statement depends upon the sufficiency of the disclosure of relevant investment data. Thus, in *In re Adana Mortgage Bankers, Inc.*, 14 B.R. 29 (Bkrtcy.Ct.N.D.Ga.1981) the Court rejected a disclosure statement which failed to provide relevant financial information or outline the risk to creditors under the plan. See also *In re William Gable Co.*, 10 B.R. 248, 7 B.C.D. 571 (Bkrtcy.N.D.W.Va.1981).

The disclosure statement submitted by ARMT, presumably to inform investors as to how the debtor got into financial difficulty and how it will emerge through the disclosed plan into an economically viable entity, is fatally defective and deficient.

The disclosure statement provides little or no information about the debtor's assets and liabilities. With the exception of Capital Cities, variously described as a "nominal" creditor, "ostensibly a creditor" a "de facto shareholder" and "a de jure or de facto parent of the debtor," ARMT does not specifically identify other creditors. The disclosure statement even fails to identify, indicate the amount of, or classify claims. He does not, for example, disclose his personal claims against the debtor (challenged by the trustee) which total almost one half million dollars. According to the disclosure statement, with the exception of a vague and contingent proposal to resolve the claim of Capital Cities, "all other creditors" (unnamed and undefined) will "with minimal distinctions" (undefined) be unimpaired. In lieu of specifics on how the plan is to be funded and in order to provide investors with the confidence that his plan is feasible, ARMT[2] gives his personal assurances as follows:

> "Debtor believes that freed of the court's control, it can develop financial strength to pay its debts and ultimately retire its preferred stock. Since ARMT is willing to work for Debtor ad infinitum without compensation as a shareholder,[3] his willingness to expend his energies provides some concrete support for the view he believes the Debtor can and will be successfully reorganized and retire its preferred stock and other indebtedness."

ARMT goes on to state that "Debtor corporation was undercapitalized and needs only financial rehabilitation to be successful." The method by which such financial rehabilitation is to be accomplished is, however, undisclosed.

Perhaps the most glaring deficiency in ARMT's proposed disclosure statement is his failure to disclose the status of the debtor's license. Although he devotes considerable space to self-aggrandizing claims of managerial and financial expertise as well as an undaunted spirit in the face of alleged malicious prosecution and illegal incarceration, no mention is made of the fact that the Federal Communications Commission might reject any license application for the debtor if ARMT has any management role. In view of the dependence of ARMT's plan upon the granting of an F.C.C. license, the failure of ARMT to disclose the uncertainty of such a license is nothing less than fraudulent deceit. As the Court noted in *In re WHET, Inc.,* 12 B.R. 743, 745 (Bkrtcy.Ct. D.Mass.1981), concerning a Chapter 11 corporate debtor which operates a Massachusetts radio station, as to which ARMT claims to be the sole shareholder,

> "It should be obvious that any outside investors would be unlikely to invest so long as there could not be a complete change of ownership since the F.C.C. requirements on the station's renewals, which are now in process, consider the stockholders' moral fitness, and Anthony Martin-Trigona's conviction of a felony involving moral turpitude would present a substantial obstacle to any reorganization other than a reorganization that involved a complete change of ownership, i.e., a sale."

## IV

## INACCURATE, DECEPTIVE AND INAPPROPRIATE CLAIMS AND STATEMENTS

■ Beyond his failure to demonstrate authorization to file a disclosure statement on behalf of the debtor and apart from the totally deficient contents of his disclosure, either of which render the statement fatally defective, ARMT has injected his statement

---

**2.** Throughout the disclosure statement ARMT frequently refers to himself as the debtor and vice versa, despite a previous court ruling to the contrary.

**3.** This claim is misleading in view of the fact that when it was made ARMT was a federal prisoner. Furthermore, he is currently appealing from this Court's order granting the rejec-

tion of his illusory, executory contract with the debtor, under which he would have been paid $2500 a month. Finally, the proposed plan states that the debtor will pay its president, ARMT's mother, or the president's assignee a monthly management and consulting fee and retainer in the amount of $2500.

with innumerable claims and statements which range from inaccurate to misleading and from inappropriate to defamatory. While not all of the claims and statements are of sufficient virulence to warrant rejection of the entire disclosure statement, many are, and the cumulative effect is clearly a sufficient basis for that result.

For example, ARMT states, "The sole shareholder of Debtor, ARMT, has maintained active daily contact with Debtor. Until his present problems are resolved, he would remain only in a consulting capacity with the Debtor, as he does at present, and not be an officer of the company." That statement fails to take into account that (1) all of his legal and equitable rights to his stock are held by the trustee in his individual case, (2) as a federal prisoner he has not had "active daily contact with Debtor," (3) his "present problems" as a convicted felon may last for many years, (4) he is not a consultant to the debtor and he has not been allowed to participate in any manner whatsoever by the debtor's trustee, and (5) that an F.C.C. license may not be granted to a reorganized company which has any relationship with ARMT.

In addition, the various statements regarding Capital Cities are not only inaccurate, they are distorted and misleading. ARMT apparently wishes to convince creditors that Capital Cities is an equity holder rather than a secured creditor, which it clearly is. The apparent purpose of such deception is to get support from unsecured creditors who are led to believe that a secured creditor which had priority over their claim would, under his plan, be subordinated to their claims.

Beyond the numerous other distortions and deceptions are various statements and claims which simply have no place in a disclosure statement. ARMT's boasts and complaints are benign examples. His scurrilous and defamatory attacks upon federal judges and prosecutors in Illinois, however, are malignant and would be carved out of his disclosure statement if it had any chance of independent life. Finally, the repetition and expatiation of defamatory statements against the trustee and others, which had previously been stricken, as mentioned above, demonstrates an arrogant defiance of this Court's order. Since ARMT is apparently unwilling to follow the directions of this Court, no useful purpose would be served by merely striking the offensive parts of his disclosure statement.

V

CONCLUSION

For all of the above reasons, it is accordingly Ordered that the disclosure statement filed by ARMT on January 21, 1982 is rejected and may not be distributed, and acceptance of the plan it purports to disclose may not be solicited.