**In re James Dean RICKER d/b/a Rill Developing Company, Debtor.**

**FINANCEAMERICA CORPORATION, Plaintiff.**

v.

**James Dean RICKER, Defendant.**

**Bankruptcy No. 3–82–01254.**
**Adv. No. 3–82–1004.**

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 19, 1983.

Stone & Hinds, P.C., Steven D. Lipsey, Knoxville, Tenn., for plaintiff.

Egerton, McAfee, Armistead & Davis, P.C., Celeste Herbert, Knoxville, Tenn., for defendant.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff FinanceAmerica Corporation seeks judgment against the debtor, James Dean Ricker, in the amount of $5,311.74 and a determination of nondischargeability under 11 U.S.C.A. § 523(a)(6) (1979),[1] alleging willful and malicious conversion of property.

I

FINDINGS OF FACT

1. The debtor purchased from Video Trac Systems, Inc., on July 15, 1980, one (1)

---

1  "(a) A discharge ... does not discharge an individual debtor from any debt—

.    .    .    .    .    .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."
11 U.S.C.A. § 523(a)(6) (1979)

Mitsubishi large screen television, one (1) Mitsubishi 13″ color television, one (1) Mitsubishi VHS recorder, plus remote, and certain accessories to the above-mentioned items of personal property, for the "cash selling price—including tax" of $6,532.48.

2. The debtor made a down payment of $1,132.48 and executed a Retail Installment Contract evidencing the balance owing and granted to Video Trac Systems, Inc., a security interest in the property purchased by him.

3. The Retail Installment Contract indicates the amount financed to be $5,400.00, with a finance charge of $1,735.60 added.

4. The Retail Installment Contract and security agreement were transferred for value to FinanceAmerica on July 17, 1980.

5. A financing statement (UCC–1) was filed by FinanceAmerica with the Register of Deeds for Knox County, Tennessee.

6. The large screen T.V. was sold by the debtor for $2,700.00 in May, 1981. The VHS recorder, plus remote, and accessories, along with other items of personal property in which FinanceAmerica did not have a security interest, were sold by the debtor for $1,600.00, in June 1981.

7. The items listed in paragraph six (6) were sold by the debtor with knowledge of the security interest of FinanceAmerica. The proceeds of the sales were not remitted to FinanceAmerica.

8. FinanceAmerica was not informed by the debtor of the sales of the secured property until June, 1982.

9. The debtor does not know to whom he sold the property.

10. The debtor made 13 payments to FinanceAmerica of $148.56 each. Several payments were made after the sales of the property.

11. The debtor still has possession of the Mitsubishi 13″ color television, and FinanceAmerica retains a perfected security interest in the same.

12. FinanceAmerica filed suit on July 1, 1982, against the debtor in the General Sessions Court for Knox County, Tennessee,

and obtained judgment by default on July 28, 1982, in the amount of $5,311.74.

13. The judgment granted FinanceAmerica reflects a principal balance due and owing of $4,618.91 as of the date of the filing of the action and the remaining portion of the judgment reflects a 15% attorney fee granted by the Court pursuant to the provisions of the Retail Installment Contract.

14. The contract provides that the buyer (Ricker) will not sell, dispose of, or mortgage the property without consent of the seller.

## II

Conversion is "[a]ny unauthorized act which deprives an owner of his property permanently or for an indefinite time. *Forbush v. San Diego Fruit & Produce Co.,* 46 Idaho 231, 266 P. 659, 663." Black's Law Dictionary 402 (4th ed.1951).

Clause (2) of section 17(a) of the Bankruptcy Act excepted from discharge debts arising from willful and malicious conversion of the property of another. This type of debt is not specified as nondischargeable in § 523(a) since "willful and malicious injury" covers a "willful and malicious conversion." The discussion in the House Report of Code § 523(a)(6) recites in part: "Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person." H.Rep. No. 595, 95th Cong., 2d Sess. 365, *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6320.

In order to fall within the exception of § 523(a)(6), the injury must have been both willful and malicious.

Injuries within the meaning of the exception are not confined to physical damage or destruction; but an injury to intangible personal or property rights is sufficient. Thus the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception.

3 Collier on Bankruptcy, ¶ 523.16 (15th ed. 1982).

■ It is true that not every claim founded on a mere technical conversion without conscious intent to violate the rights of another, and under mistake or apprehension, is nondischargeable. In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), Justice Cardoza, writing for the court, observed "[A] willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice ... [upon] an honest but mistaken belief ..." *Id.* at 332, 55 S.Ct. at 153.

The facts in the instant case are similar to the facts in *Pioneer Bank and Trust Co. v. Scotella*, 18 B.R. 975, 8 B.C.D. 1282 (Bkrtcy.N.D.Ill.1982). In that case, Land of Lakewood, Inc. (Lakewood) financed the purchase of a boat through Pioneer Bank. Scotella was the principal officer and owner of Lakewood. A chattel mortgage security agreement which Scotella personally guaranteed was executed for $17,575.00. Sometime later Scotella sold the boat for $19,631.00 without Pioneer's consent or knowledge. The proceeds were used for the general operating expenses of Lakewood. Scotella continued to make payments until both he and Lakewood filed bankruptcy petitions. At that time the balance due Pioneer was $11,646.60. The debt was held nondischargeable in that amount, the court finding that by selling the boat, Scotella, under the facts of the case, was guilty of a willful and malicious conversion of property.

■ The facts in the case before this court support a finding of willful and malicious conversion. The debtor bought some expensive merchandise. He gave the seller a security interest in that property to secure the unpaid balance. Within a year he sold most of the merchandise to "unknown"

persons. He has forever deprived the secured party from realizing on its security.[2] He concealed the sale of the property for many months. The debtor well knew the purpose for which a seller retains a security interest in property sold. The debtor is a businessman and a college graduate. The debtor converted the property without justification or excuse. He was encountering some financial and marital problems at the time of the sale, but the conversion was neither innocent nor technical. The debt is thus within the exception of § 523(a)(6), a willful and malicious injury to property.

■ This leaves for determination the amount of the excepted debt. Plaintiff insists the amount is $5,311.74, the amount of the judgment entered in the General Sessions Court for Knox County. In support of its position plaintiff cites *Ohio Citizens Trust Co. v. Smith*, 11 B.R. 20 (Bkrtcy.N.D. Ohio 1981), and *Firstmark Acceptance Corp. v. Donofrio*, 19 B.R. 734 (Bkrtcy.N.D.Ohio 1982). Plaintiff concedes, however, that, where the proceeds derived from the sale of converted property are *less* than the amount of the debt, the courts have generally split as to the amount of the debt which is nondischargeable.

In this state and in this circuit the rule is clear. In *Cline v. Rountree*, 236 F.2d 412 (6th Cir.1956), Cline and Schweizer, individually and as partners, converted Rountree's property consisting of a railroad shipment of steel. The court discussed only the issue of damages: "Damages in an action for conversion depend upon the reasonable market value of the property converted." *Id.* at 413.

The court further noted, however, that when wrongful conduct has rendered difficult the precise damages suffered by the party affected, the best available evidence before the court is sufficient to fix the amount of the damages.

The only evidence in the record in the instant case is the debtor's testimony that

---

**2.** Since the creditor held a perfected security interest in the collateral, the creditor could have pursued its security interest had the debt-

or identified the persons to whom it was sold. The sale to unknown persons has, of course, defeated the creditor's right in this regard.

the sale of the property was for an "extremely good price," 60% of the retail price. The amount received by the debtor from the sales was $4,300.00. One of the sales by the debtor did contain some undisclosed property in which plaintiff did not hold a security interest. But as stated in *Cline*, "[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." 236 F.2d at 413.

Judgment will be entered in the amount of $4,300.00 which judgment is nondischargeable. 11 U.S.C.A. § 523(a)(6) (1979).