In re Kirk Young ALDRICH, Debtor.

FIRSTMARK FINANCIAL CORPORATION, Plaintiff,

v.

Kirk Y. ALDRICH, Defendant.

Bankruptcy No. 81–01613.
Adv. No. 81–0810.

United States Bankruptcy Court, N.D. Ohio, W.D.

March 7, 1984.

---

David L. Honold, Toledo, Ohio, for plaintiff.

Catherine Levis-Macpherson, Charles T. McGinnis, III, Toledo, Ohio, for defendant.

Kirk Y. Aldrich, pro se.

## MEMORANDUM OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard on the complaint of the Firstmark Financial Corporation to determine the dischargeability of a specific debt pursuant to 11 U.S.C. § 523(a)(6). Considering the evidence adduced at trial, the stipulations of fact, and the memoranda of law submitted by the parties, the Court finds the debt to be dischargeable.

### FACTUAL BACKGROUND

Kirk Y. Aldrich (Debtor) filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 6, 1981.

On October 29, 1979, Debtor purchased a washer and dryer from seller and granted seller a security interest in the appliances. Seller subsequently assigned its security interest to Plaintiff.

In May of 1981 Debtor sold the washer and dryer for $350.00. The appliances, which were being stored at the home of Debtor's parents at the time of their sale, were no longer needed by Debtor who then lived in a mobile home equipped with a washer and dryer. The appliances were sold since Debtor no longer had his parents' consent to store the appliances in their home. The $350.00, which represented the fair market value of the appliances at the time of their sale, was used by Debtor to pay living expenses for his two minor children. Debtor made one or two payments on the appliances after they were sold in May of 1981 and before he filed bankruptcy in August of 1981.

Debtor was 28 years old at the time of trial. He was then and had previously been employed as an automobile mechanic. He also had previous employment experience as a truck driver.

Debtor had previously purchased goods on credit and given the sellers security interests in the collateral. In 1980, for instance, he purchased a 1973 Corvette and financed the vehicle with General Motors Acceptance Corporation (GMAC). GMAC

took a lien on the car. When Debtor experienced financial difficulties and could no longer make payments on the car, he voluntarily relinquished possession of the vehicle to GMAC.

## DISCUSSION

The issue in this case is the standard to be applied in determining whether the debt remaining after the unauthorized sale or conversion of property in which a creditor maintains a security interest is dischargeable under § 523(a)(6) of the Bankruptcy Code. This section excepts from discharge any debt

for willful and malicious injury by the debtor to another entity or to the property of another entity.

Plaintiff maintains that the unauthorized sale of collateral held as security and subsequent failure to apply the proceeds to the debt is a "willful and malicious" conversion of property and therefore excepted from discharge. Defendant argues that the unauthorized sale of collateral held as security is not per se a "willful and malicious" injury to Plaintiff's property. At best, Defendant argues, the sale of the property in this case was merely a technical conversion. Defendant maintains that Plaintiff has failed to prove that the sale in issue was "willful and malicious" under the standard of § 523(a)(6) of the Bankruptcy Code.

■ Section 17(a)(2) of the old Bankruptcy Act excepted from discharge debts "for willful and malicious conversion of the property of another." Although § 523(a) of the Bankruptcy Code does not specifically include among the exceptions to discharge a debt for the conversion of property, it is clear that a "willful and malicious injury" under § 523(a)(6) includes a "willful and malicious" conversion. 124 Cong.Rec. H. 11,095–6 (daily ed. Sept. 28, 1978); S. 17, 412–13 (daily ed. Oct. 6, 1978). *See, e.g., Clark v. Gatte (In re Gatte),* 31 B.R. 46 (Bkrtcy.W.D.La.1983); *General Electric Credit Corp. v. Graham (In re Graham),* 7 B.R. 5, 6 B.C.D. 539 (Bkrtcy.D.Nev.1980).

■ Despite the similarity of the section 17a(2) exception under the Act and section 523(a)(6) of the Code, the legislative history of the Code indicates that the standard for determination whether a debt is dischargeable under the Code has, to an extent, been changed.

Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker ·v. Colwell,* 139 [193] U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled.

House Report No. 95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6320–6321. It is thus clear from both the House and Senate reports that "willful" under § 523(a)(6) means "deliberate or intentional" and that the many cases under the Act holding various degrees of recklessness to constitute willfulness and maliciousness are no longer controlling. *See generally,* 3 *Collier on Bankruptcy,* ¶ 523.16 (15th ed. 1983).

The meaning of "maliciousness" under § 523(a)(6), however, is less than clear. One line of cases, relying to a greater or lesser degree on *Grand Piano & Furniture Co. v. Hodges (In re Hodges),* 4 B.R. 513, 6 B.C.D. 531 (Bkrtcy.W.D.Va.1980), have interpreted the legislative record of § 523(a)(6) to have obviated the standard of implied or constructive malice of *Tinker v. Colwell, supra.* These courts have held that "malicious" under § 523(a)(6) means "intent to do harm." *See, e.g., Liberty National Bank & Trust Co. v. Hawkins (In re Hawkins),* 6 B.R. 97, 6 B.C.D. 1054 (Bkrtcy. W.D.Ky.1980); *In re Meyer,* 7 B.R. 932 (Bkrtcy.N.D.Ill.1981); *Ohio Grain Co. v. Gentis (In Re Gentis),* 10 B.R. 209 (Bkrtcy.S. D.Ohio 1981); *United Bank v. Nelson (In re Nelson),* 10 B.R. 691 (Bkrtcy.N.D.Ill.1981); *First National Bank v. McLaughlin (In re McLaughlin),* 14 B.R. 773 (Bkrtcy.N.D.Ga. 1981). A second group of cases have held that personal hatred, spite, or ill will are not required in order to establish a "mali-

cious" injury under § 523(a)(6), but that the looser *Tinker* common law definition of implied or constructive malice still applies. *See e.g., Farmers Bank v. McCloud (In re McCloud),* 7 B.R. 819 (Bkrtcy.M.D.Tenn. 1980); *Credithrift of America v. Auvenshine (In re Auvenshine),* 9 B.R. 772, 7 B.C.D. 511 (Bkrtcy.W.D.Mich.1981); *First National Bank v. Grace (In re Grace),* 22 B.R. 653 (Bkrtcy.E.D.Wis.1982); *Ford Motor Credit Co. v. Klix (In re Klix),* 23 B.R. 187 (Bkrtcy. E.D.Mich.1982).

In choosing between these conflicting approaches, the district court in *United Bank v. Nelson,* 35 B.R. 766, 11 B.C.D. 159 (D.C.N. D.Ill.1983), consistently with *United Virginia Bank v. Fussell (In re Fussell),* 15 B.R. 1016 (D.C.W.D.Va.1981), interpreted the legislative history of the section to mean that, in enacting § 523(a)(6) of the Code, Congress only intended to overrule the "reckless disregard" standard of *Tinker* as it applies to the requirement of willfulness, but that the second holding of *Tinker,* that maliciousness could be established by implied or constructive malice, was meant to be left undisturbed. The Court pinpointed the legislative comments, reproduced *supra,* as the source of the confusion:

> The above cited Congressional comments are, in fact, the source of the split in Bankruptcy Court opinions construing § 523(a)(6). As explained earlier, *Tinker* stood for two separate and distinct propositions of law; one, permitting a loose standard of 'reckless disregard' to constitute willful, and another, which permitted implied malice to satisfy the malicious requirement. The court believes that the Congressional comments are addressed only to the first holding,—'to the extent that other cases have relied on *Tinker* to apply a reckless disregard standard, they are overruled.' Congress provided a specific definition for the willful requirement, 'willful means deliberate or intentional.' There is nothing in the legislative record, however, to indicate that *Tinker's* malice holding has been overruled or in any way obviated. Unfortunately, a number of courts have read the legislative history as overruling *Tinker* in

its entirety. It is this notion that both holdings of *Tinker* were overruled which is responsible for the split in defining malice under § 523(a)(6).

35 B.R. 766, 11 B.C.D. at 162.

■ As the Court subsequently noted, however, a careful reading of the Committee Report in § 523(a)(6) reveals that Congress only intended to overrule those cases which relied on *Tinker* to apply a "reckless disregard" standard to the term "willful." With regard to the common law *Tinker* definition of malice, the court remarked:

> There is no clear indication that Congress intended to overrule those cases interpreting *Tinker* as a malice holding. *Tinker* specifically adopted a standard of implied malice and expressly rejected an 'intent to harm' standard. Moreover, the legislative record itself indicates that a specific 'intent to do harm' is contrary to Congressional intent.
>
> > 'The intent is to include in the category of nondischargeable debts a conversion under which the debtor willfully and maliciously intends to borrow property for a short period of time *with no intent to inflict injury but in which injury is in fact inflicted.'*
>
> *In re Scotella,* 18 B.R. 975, 977 (Bkcy.N.D. Ill.1982) *citing* H.R. No. 95–595, 95th Cong., 1st Sess. (1977), 364 U.S.Code Cong. & Admin.News, 1978–6320. A situation in which a debtor sells secured property knowing that the sale would injure the creditor by depriving him of his collateral and proceeds in the face of that knowledge is the type of debt Congress intended to make nondischargeable under § 523(a)(6). *In re Scotella, supra* at 977. This is consistent with the type of debt deemed non-dischargeable under the parallel exception of the old Act, 'if the act of conversion is done deliberately and intentionally in *knowing disregard of the rights of another, it falls within the statutory exclusion even though there may be an absence of special malice.'* *Bennett v. W.T. Grant Co., supra* [481 F.2d 664] at 665.

35 B.R. 766, 11 B.C.D. at 165. This Court agrees with the analysis and reasoning of *Nelson* and holds that, in enacting § 523(a)(6), Congress intended the common law *Tinker* standard of implied or constructive malice to apply in determining if an act is malicious under the Code.

Finally, in *Nelson,* consistent with the *Tinker* standard, the court defined "willful and malicious injury" under § 523(a)(6) in the context of a conversion of property:

this court holds that in the context of a debtor who sells encumbered property prior to bankruptcy, 'willful and malicious injury' means a deliberate or intentional act in which the debtor knows his act would harm the creditor's interest and proceeds in the face of that knowledge. The debtor's knowledge may be inferred from his experience in business, his concealment of the sales, his admission that he had read the security agreement which forbade the sale or that he understood what was meant by the term security agreement and collateral used as security. *In re Ries,* 22 B.R. 343, 347 (Bkcy.W.D.Wisc.1982); *In re Klix,* 23 B.R. 187, 7 CBC 2d 276, 280 (Bkcy.E.D. Mich.1982); *In re Donofrio,* 19 B.R. 734, 736 (Bkcy.W.D.Ohio 1982); *In re Scotella,* 18 B.R. 977 [8 BCD 1192] (Bkcy.N.D.Ill. 1982). A merely technical or innocent conversion, or one under mistake, absent aggravated features does not strictly constitute 'willful and malicious injury.' *Davis v. Aetna, supra* [293 U.S. 328, 55 S.Ct. 151] at 153 [79 L.Ed. 393].

35 B.R. 766, 11 B.C.D. at 166.

■ Applying this standard in the present case, the Court concludes that while Debtor may have acted deliberately or intentionally in selling the washer and dryer held as security by Plaintiff, he did not act in knowing disregard of Plaintiff's rights.

The testimony adduced at hearing did not clearly establish that Debtor acted in violation of the security agreement with Plaintiff. Debtor was an automobile mechanic and truck driver with limited experience in obtaining credit on a secured basis. Although the Debtor's prior conduct in returning an automobile to GMAC when he could no longer make payments reveals that he did understand the nature and effect of having given collateral as security, there was no evidence adduced that he read the security agreement in issue *see, McMahan's v. Casselli (In re Casselli),* 4 B.R. 531 (Bkrtcy.C.D.Cal.1980) (failure of debtor to read revolving charge account agreement and thus be aware of seller's retention of a security agreement precludes a finding of malicious conversion), and that he was otherwise aware of the specific terms of the agreement in this case. The Court cannot find, as a general matter, that by virtue of Debtor's limited experience and awareness of creditors' rights in the area financing automobiles, he was similarly aware and sophisticated in dealings with household appliances. Also, there was no evidence of concealment of the sale in this case.

While the Court thus finds Debtor's obligation to Plaintiff is dischargeable in this case, it should be noted that, even if the Court found to the contrary, the measure of the nondischargeable debt would not be the $719.00 owed to Plaintiff but the $350.00 which the parties have stipulated is the fair market value of the property. Thus, as the court in *FinanceAmerica Corp. v. Ricker (In re Ricker),* 26 B.R. 862, 864 (Bkrtcy.E.D. Tenn.1983) noted, relying on *Cline v. Rountree,* 236 F.2d 412, 413 (6th Cir.1956), damages in a conversion action depend on the reasonable market value of the property converted. *See also, Wisconsin Finance Corp. v. Ries (In re Ries),* 22 B.R. 343 (Bkrtcy.N.D.Wis.1982); *Credithrift of America v. Howard (In re Howard),* 6 B.R. 256 (Bkrtcy.M.D.Fla.1980). *Cf. Trust Company Bank v. Ricketts (In re Ricketts),* 16 B.R. 833 (Bkrtcy.N.D.Ga.1982). (There being no way to value the loss of the security, the entire balance of the debt nondischargeable). It is therefore,

ORDERED, ADJUDGED, AND DECREED that Debtor's obligation to Firstmark Financial Corporation be, and hereby is, discharged.