**In re Regina L. MOORE, Debtor.**

**COLUMBUS MUNICIPAL EMPLOYEES FEDERAL CREDIT UNION, Plaintiff,**

v.

**Regina L. MOORE, Defendant.**

**Bankruptcy No. 2–87–01758.**

**Adv. Pro. No. 2–87–0228.**

United States Bankruptcy Court, S.D. Ohio, E.D.

March 9, 1988.

---

Michael Allerding, Westerville, Ohio, for Columbus Mun. Employees Federal Credit Union.

Fredrick L. Ransier, Ransier & Ransier, Columbus, Ohio, for debtor.

## OPINION AND ORDER ON DISCHARGEABILITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

This adversary proceeding is before the Court on a Complaint to Determine Dischargeability filed by the Columbus Municipal Employees Federal Credit Union (the "Credit Union") against Regina L. Moore ("Moore"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core pro-

ceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## II. *Statement of Facts*

Moore is a Chapter 7 debtor in this Court. On August 4, 1986, she executed, as borrower, a Note and Disclosure Statement ("Note"). Pursuant to the terms of the Note, Moore granted the Credit Union a non-purchase money security interest in two automobiles—a 1980 Buick Regal and a 1978 Oldsmobile Cutlass. On the reverse side of the Note, under the heading "Security Agreement," the following language is provided: "[Y]ou [Moore] promise not to sell or lease the property or to use it as security for a loan with another creditor until your loan with the credit union is repaid." The Note provides elsewhere that "the property" referenced in the foregoing sentence is the collateral pledged as security for Moore's obligations.

The Note apparently consolidated Moore's then-existing obligations to the Credit Union. The vehicles pledged as collateral were owned by Moore at the time she granted the security interest. The 1980 Buick was purchased in 1986 because the Oldsmobile, acquired in 1983 or 1984, was in poor operating condition, and was barely driveable due to its high mileage, poor engine, substantial rust and worn tires. Because she used the Buick for her daily transportation needs, and due to the Oldsmobile's advanced state of disrepair, Moore allowed a Richard Bell ("Bell") to rent the Oldsmobile beginning in September, 1986, at a price of $60 per month. The monthly rental received from Bell assisted Moore in making her monthly mortgage payments on her residence. Moore told Bell that he should not regard their arrangement as either a gift, sale or lease of the automobile.

Bell made four monthly payments before he defaulted. When Moore did not receive the fifth payment, she demanded that Bell return the Oldsmobile, but he refused. Moore immediately attempted to file automobile theft charges with the Columbus Police Department and the Prosecutor's Office, but was advised that her complaints were civil, not criminal, in nature. Moore thereupon requested the advice of two separate attorneys, including her bankruptcy counsel, with respect to her rights and remedies in regaining possession of the vehicle.

Moore advised the Credit Union, in writing and orally, of Bell's refusal to return the Oldsmobile and her inability to obtain its return. Apparently the Credit Union made no independent effort, even to this date, to locate the vehicle. Moore voluntarily returned the Buick to the Credit Union in December, 1986, but has been unsuccessful in her repeated attempts to locate Bell or the Oldsmobile. Moore has not attempted to obtain automobile license plates or license renewal stickers for the Oldsmobile subsequent to its delivery to Bell.

Moore made two partial payments to the Credit Union under the Note prior to filing her petition in this Court. The Credit Union claims it has been monetarily damaged by Moore's agreement to rent the Oldsmobile to Bell. The Credit Union argues further that such rental by Moore constitutes a willful and malicious conversion of its property, requiring a finding of nondischargeability of Moore's debt to the Credit Union.

Following a trial on March 7, 1988, the Court took this matter under advisement.

## III. *Discussion*

The Credit Union's complaint requests this Court's determination that Moore's debt under the Note is nondischargeable in the amount of $8,496.24. At trial, the Credit Union orally lowered its monetary demand to approximately $2,050, the alleged value of the Oldsmobile at the time the Note was signed by Moore. The Credit Union claims that Moore's rental of the Oldsmobile to Bell constitutes a conversion of its collateral in contravention of 11 U.S.C. § 523(a)(6).

Section 523(a)(6) excepts from discharge any debt:

> [F]or willful and malicious injury by the debtor to another entity or to the property of another entity; ...

The Credit Union claims an injury by virtue of the debtor's alleged willful and malicious conversion of its property. In order to fall within the exception of § 523(a)(6), the injury to an entity or property must have been willful *and* malicious. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. *See*, H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5862–5865, 6318. It is clear from both the House and Senate Reports to the Bankruptcy Code that the standard of "reckless disregard," expressed in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) and *Greenfield v. Tuccillo*, 129 F.2d 854 (2d Cir.1942), *rev'g.* 42 F.Supp. 857 (E.D.N.Y.1941), is no longer applicable; thus, the many cases holding various degrees of recklessness to constitute willfulness and maliciousness are no longer controlling. *See generally, 3 Collier on Bankruptcy,* ¶ 523.16 (15th ed. 1987).

■ There are two lines of cases construing the meaning of "maliciousness." One line of cases, following *Grand Piano & Furniture Co. v. Hodges (In re Hodges),* 4 B.R. 513 (Bankr. W.D.Va.1980), has interpreted the legislative record of § 523(a)(6) to have eliminated the implied or constructive malice standard enunciated in *Tinker v. Colwell* ("Tinker"), *supra; Firstmark Financial Corp. v. Aldrich (In re Aldrich),* 37 B.R. 860, 862 (Bankr.N.D.Ohio 1984). These courts have imposed a more stringent standard, holding that "malicious" means "intent to do harm." *See, e.g., Liberty National Bank & Trust Co. v. Hawkins (In re Hawkins),* 6 B.R. 97 (Bankr.W.D.Ky.1980); *Ohio Grain Co. v. Gentis (In re Gentis),* 10 B.R. 209 (Bankr. S.D.Ohio 1981). A second line of cases has required a more relaxed standard, holding that personal hatred, spite, or ill will are not required in order to establish a "malicious" injury, and that the looser *Tinker* common law definition of implied or constructive malice still applies. *See, e.g., Aldrich* at 862–863; *Farmers Bank v. McCloud (In re McCloud),* 7 B.R. 819 (Bankr.M.D.Tenn.1980); *Ford Motor Cred-*

*it Co. v. Klix (In re Klix),* 23 B.R. 187 (Bankr.E.D.Mich.1982).

The district court in *United Bank v. Nelson,* 35 B.R. 766 (N.D.Ill.1983), concluded from a review of the legislative history of § 523(a)(6) that Congress only intended to overrule the "reckless disregard" standard of *Tinker;* it intended to leave undisturbed the establishment of "maliciousness" by implied or constructive malice. *Accord, Pioneer Bank and Trust Co. v. Scotella (In re Scotella),* 18 B.R. 975, 977 (Bankr.N.D.Ill.1982). This Court concurs with the analysis of the *Nelson, Aldrich* and *Scotella* courts and holds that Congress intended the common law *Tinker* standard of implied or constructive malice to apply in determining if an act is malicious under § 523(a)(6).

The issue before this Court, then, is whether Moore's rental of her Oldsmobile to Bell constituted a willful and malicious injury to the Credit Union or its property. Plaintiff must prove these elements by clear and convincing evidence. *Farmers and Merchants Bank v. Brinsfield (In re Brinsfield),* 78 B.R. 364, 370 (Bankr.M.D. Ga.1987). In *Aldrich, supra,* the plaintiff argued that the defendant's unauthorized sale of collateral—a washer and dryer— held as security, and subsequent failure to apply the proceeds to the debt, was a willful and malicious conversion of property which should be excepted from the discharge. The court in *Aldrich,* as here, concluded that the common law standard of implied or constructive malice still pertained under the Code. The *Aldrich* court also provided a workable definition of a "willful and malicious injury" under § 523(a)(6) in the context of a conversion of property, which this Court adopts:

> [T]his court holds that in the context of a debtor who sells encumbered property prior to bankruptcy, "willful and malicious injury" means a deliberate or intentional act in which the debtor knows his act would harm the creditor's interest and proceeds in the act of that knowledge. The debtor's knowledge may be inferred from his experience in business, his concealment of the sales, his admis-

sion that he had read the security agreement which forbade the sale or that he understood what was meant by the term security agreement and collateral used as security. *In re Ries,* 22 B.R. 343, 347 (Bankr.W.D.Wisc.1982); *In re Klix,* 23 B.R. 187, 7 CBC2d 276, 289 (Bankr.E.D. Mich.1982); *In re Donofrio,* 19 B.R. 734, 736 (Bankr.W.D.Ohio 1982); *In re Scotella,* 18 B.R. 975, 977 [7 BCD 1192] (Bankr. N.D.Ill.1982). A merely technical or innocent conversion, or one under mistake, absent aggravated features does not strictly constitute "willful and malicious injury." *Davis v. Aetna [Acceptance Co.], supra* [293 U.S. 328, 55 S.Ct. 151] at 153 [79 L.Ed. 393 (1934)].

37 B.R. at 864. The court concluded that while the debtor in *Aldrich* may have acted deliberately or intentionally in selling the washer and dryer, he did not act in knowing disregard of the plaintiff's rights; and, therefore, his actions did not render nondischargeable his debt to the creditor.

■ In this case, the Court finds, as an initial matter, that no conversion of the Credit Union's collateral by Moore occurred. In Ohio, an action for conversion arises when a person wrongfully exercises dominion over the personal property of another in denial of the other's right to exercise such dominion. *McGraw v. Jordan (In re Jordan),* 47 B.R. 712, 714 (Bankr.N.D. Ohio 1985). In order to prevail in such an action the plaintiff must demonstrate that the defendant (1) exercised dominion, (2) over the personal property of another, (3) without authority to exercise that dominion, (4) in denial of the other's right to do so. *Id.* at 714–15. The Court concludes that no conversion occurred here, at least not by Moore, inasmuch as she did not authorize Bell to retain possession of the Oldsmobile; to the contrary, she has made every reasonable effort to obtain its return. Her possible violation of a specific term of the Note, to wit: "leasing" the Oldsmobile to Bell, may be a violation of contract, but such action in no way constitutes conversion of the Credit Union's collateral. Section 523(a)(6) relates to torts not to contracts. *See,* 3 *Collier on Bankruptcy* ¶ 523.16 at 523–111. Thus, Moore's alleged violation of the Note is not actionable under § 523(a)(6).

■ Further, there was no evidence that Moore's rental of the Oldsmobile to Bell was both willful and malicious. While her agreement to lease the vehicle to Bell was intentional, there was no intent to convert property in which the Credit Union has an interest. Moore simply needed additional funds from the rental of a dilapidated automobile to supplement her mortgage payments during a period of unemployment. Moore did not know or intend that her act might harm the Credit Union; to the contrary, there is no indication that she was aware of the language on the reverse side of the Note which would prohibit a lease and she has made every effort to obtain return of the vehicle. Hence, there has been absolutely no showing of maliciousness, even under *Tinker's* less stringent standard.

Applying the *Aldrich* test, there was no intent to harm the Credit Union. Furthermore, Moore did not conceal the rental agreement; in fact, she brought it to the Credit Union's attention. Simply put, there is no evidence from this record to support a finding of willful and malicious conduct or injury to the Credit Union or its property— there is not even evidence supporting a conversion of property by Moore, whether it is construed as willful and malicious, or simply technical. Thus, the Credit Union has failed to support by clear and convincing evidence that Moore's debt to it is nondischargeable.

■ Even if the Credit Union had adduced sufficient evidence in support of its complaint, damages in a conversion action depend on the reasonable market value of the property converted. *FinanceAmerica Corp. v. Ricker (In re Ricker),* 26 B.R. 862, 864 (Bankr.E.D.Tenn.1983), citing *Cline v. Rountree,* 236 F.2d 412, 413 (6th Cir.1956). Here, plaintiff introduced no evidence of the reasonable market value of the Oldsmobile. Plaintiff's representative, Mr. Walden, simply indicated that he had used an industry manual in assigning a wholesale value of $1,775 and retail value of $2,685

for a vehicle of that make and type in good condition. It is not clear, however, what reference date he used in selecting those values. Given the fact that Moore had purchased the Oldsmobile used for $2,700 and that the vehicle was in extremely poor operating order, the Court could not assign any more than salvage value to it. So, even had plaintiff established the elements supporting a claim for nondischargeability under § 523(a)(6), the reasonable market value of the property allegedly converted, at the time of conversion, would be minimal.

On the basis of the foregoing findings of fact and conclusions of law, it is the decision of this Court that the Credit Union has failed to prove by clear and convincing evidence that the Debtor violated 11 U.S.C. § 523(a)(6). Accordingly, Moore's obligation to the Credit Union is hereby discharged and the Complaint is DISMISSED. A Judgment Entry to that effect shall be entered.

For the reasons set forth above, the plaintiff's Complaint is DENIED.

IT IS SO ORDERED.