**In re Charles T. LAU, Debtor.**

**SEARS ROEBUCK AND COMPANY, Plaintiff,**

v.

**Charles T. LAU, Defendant.**

**Bankruptcy No. 91–30350.**
**Adv. No. 91–317.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 11, 1992.

John Intagliata, Toledo, Ohio, for plaintiff.

Richard Grimes, Norwalk, Ohio, for defendant.

### OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for trial upon plaintiff's complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6). Upon consideration of the evidence adduced at trial, the court finds that debtor/defendant's debt due plaintiff in the amount of $3,059.04 should be excepted from discharge.

### FACTS

The parties stipulated:

1. that plaintiff is a creditor of the Debtor pursuant to the security agreement signed by the defendant and pursuant to the sales slips for items purchased on the Sears charge; that pursuant to said promissory note defendant is indebted to plaintiff for the sum of $4,370.06.

2. that defendant filed a petition in bankruptcy on January 31, 1991.

The parties also stipulated at trial, that the fair market value of the items purchased by defendant is 70% of the purchase price of $4,370.06 or $3,059.04.

At trial, defendant testified that he purchased and charged to his Sears credit card, a 45 inch TV, sleeper sofa, love seat, corner table, entertainment center, diamond ring, gold chain and microwave. He also stated that he is no longer in possession of many of these items. The TV is, according to defendant, in the possession of his former girlfriend, Teresa Rierman. The sleeper soft, love seat and corner table are at Ms. Rierman's parents' residence. These items were delivered to that house as defendant did not want his father to know that he had made purchases charged to a credit account. After he broke up with Ms. Rierman, he demanded the return of these items from Ms. Rierman's parents, but they refused to comply. Ms. Rierman's parents paid defendant $150 which he applied to his charge account. He sold the entertainment center to a friend of Ms. Rierman about two or three years ago for $100. Defendant gave Ms. Rierman the gold ring which she still possesses. The gold chain is in defendant's possession, but it is broken. Defendant gave the microwave to Ms. Rierman's parents as a gift.

Lastly, Defendant indicated that he did not read the documents accompanying his charge account explaining his rights and obligations, but admitted that he understood that Sears had the right to take back any items for which he failed to pay.

## DISCUSSION

Plaintiff seeks an exception to discharge pursuant to 11 U.S.C. § 523(a)(6) which excepts from discharge a debt resulting from a willful and malicious injury. The standard for determining willful and malicious injury, excepting a debt from discharge is:

> an injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury.

*Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987) (citing 3 *Collier on Bankruptcy* 523–111 (15th ed. 1986)), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). Specifically, plaintiff claims defendant willfully and maliciously injured plaintiff as he converted the collateral. Plaintiff must establish this cause of action by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

> This court holds that in the context of a Debtor who sells encumbered property prior to bankruptcy, "willful and malicious injury" means a deliberate or intentional act in which the Debtor knows his act would harm the creditor's interest and proceeds in the face of that knowledge. The Debtor's knowledge may be inferred from his experience in business, his concealment of the sales, his admission that he had read the security agreement which forbade the sale or that he understood what was meant by the term security agreement and collateral used as security.

*In re Keffer,* 87 B.R. 509, 511 (Bkrtcy. S.D.Ohio 1988) (quoting *In re Aldrich,* 37 B.R. 860 (Bkrtcy.N.D.Ohio 1984)). *See also In re Roeper,* 103 B.R. 898 (Bkrtcy. S.D.Ohio 1989) (conversion is any unauthorized act which deprives an owner of his property permanently or for an indefinite time; an act of conversion is willful and malicious if it is done deliberately and intentionally, in knowing disregard of the rights of another); *In re Kolbfleisch,* 97 B.R. 351 (Bkrtcy.N.D.Ohio 1989) (sale of parts from a car is comparable to common law conversion and is malicious and the debt becomes nondischargeable); *In re Linklater,* 48 B.R. 916, 12 C.B.C.2d 995 (Bkrtcy.D.Nev.1985) (when a Debtor intentionally and knowingly sells collateral without the knowledge or consent of the secured creditor, the sale constitutes a willful and malicious act and that debt then becomes nondischargeable under § 523(a)(6)); *In re Obermeyer,* 12 B.R. 26 (Bkrtcy. N.D.Ohio 1981) (the conversion of another's property without his knowledge or consent

done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the mean of § 523(a)(6) and it is the opinion of this court that Debtor's action in selling or giving away items which were secured by the loan constituted a willful or malicious conversion of property).

In the instant situation, although defendant testified that he did not read the terms of the security agreement, he admitted that he understood that plaintiff had the right to the collateral should defendant fail to make payments on the charge account. Given this admission, the court finds that defendant was aware that his act of selling the entertainment center and giving the other items away would deprive plaintiff of its property. Although defendant asserts that he has attempted to regain possession of these items, the court finds that defendant's actions were deliberate and intentional, in knowing disregard of plaintiff's rights. Plaintiff has, then, established that defendant acted willfully and maliciously, causing economic injury to plaintiff.

Defendant's counsel argued, in closing statements, that defendant advised plaintiff of the location of the items and that plaintiff may seek recourse and attempt to replevin the items from Ms. Rierman and her parents. Because it is not necessary for plaintiff to have filed a financing statement in order to perfect its security interest in the items, the court is not convinced that plaintiff has any recourse against Ms. Rierman and her parents. *See* O.R.C. § 1309.21(A)(4) (a financing statement must be filed to perfect a security interest except to perfect a purchase money security interest in consumer goods). A subsequent purchaser, for example Ms. Rierman and her parents, may take the items free of any security interest if they represent a buyer who buys without knowledge of the security interest. O.R.C. § 1309.26(B). *See* UCC 9–302(1)(d) and 9–307(2) and Official Comments thereto. Ms. Rierman and her parents may not have known of the purchase money security interest extended by plaintiff to defendant in the items they currently possess. Even if the third par-

ties were aware of the security interest, plaintiff may be unsuccessful in an attempt to repossess these items. The court is also unconvinced that plaintiff has a duty to pursue this course of action. Furthermore, the court does not find this argument defensible against plaintiff's cause of action.

Because the court finds that the debt owed plaintiff is not dischargeable in defendant's bankruptcy case, the court must then determine the measure of damages, the amount of the nondischargeable debt.

Thus, the amount of the debt to be held nondischargeable for a conversion in violation of § 523(a)(6) is the lesser of the value of the converted property or the amount of the indebtedness.

*In re Mills*, 111 B.R. 186, 207 (Bkrtcy. N.D.Ind.1988) (citation omitted). The parties stipulated that the outstanding obligation is $4,370.06 and that the fair market value of the items is 70% of the purchase price of $4,370.06; thus, the court finds that the amount excepted from discharge is $3,059.04 (70% × $4,370.06). In light of the foregoing, it is therefore

ORDERED that the debt owed plaintiff from defendant in the amount of $3,059.04 be, and it hereby is, nondischargeable.