In the Matter of Raymond Albert DURANTI, Jr., a/k/a Raymond A. Duranti, Jr., Bankrupt.

FIRST NATIONAL BANK, Plaintiff,

v.

Raymond Albert DURANTI, Jr., a/k/a Raymond A. Duranti, Jr., Defendant.

Bankruptcy No. 7801274.

United States Bankruptcy Court, W. D. Wisconsin.

Aug. 8, 1979.

Scott F. Shadel of Nowlan & Mouat, Janesville, Wis., for plaintiff, First Nat. Bank.

Richard V. Holm of Hansen, Eggers, Berres & Kelley, S.C., Beloit, Wis., for defendant, Raymond Duranti, Jr.

## OPINION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

This adversary proceeding came on for trial before the court on May 21, 1979. Extensive pretrial and post-trial briefs were filed by both parties. Plaintiff contends that the bankrupt's sale of a modular home in which it held a valid but unperfected security interest without plaintiff's consent, in violation of the security agreement and without delivering proceeds of the sale to the plaintiff constituted a malicious conversion in violation of § 17a(2) of the Bankruptcy Act. Defendant contends that his actions were not willful or malicious, that they did not constitute conversion and that the plaintiff bank was not injured.

On or about September 29, 1972, defendant, ("Duranti") borrowed $11,000.00 from the plaintiff ("Bank") to purchase a modular home. Duranti executed a note and security agreement in favor of the Bank thereby giving the Bank a first security interest in the modular home and the proceeds thereof. The Bank did not file a financing statement with the Register of Deeds of any county in Wisconsin nor did it

otherwise perfect its security interest in the modular home. Duranti lived in the modular home until the fall of 1975.

During September or October of 1975, Duranti discussed with a representative of the Bank the possibility of selling the modular home and assigning his obligations under the note and security agreement to the proposed purchaser, Henry Polson ("Polson"). The Bank refused to permit the assignment of the note and security agreement to Polson. Duranti's indebtedness to the Bank at that time was approximately $8,525.00.

Duranti sold the modular home to Polson for $16,000.00 during October, 1975 and signed the title over to Polson. The Bank was not notified of the sale and no proceeds of the sale were paid directly to the Bank. Duranti used most or all of the proceeds of the modular home sale to provide capital for his restaurant business. For some time prior to and at all relevant times after the sale, Duranti resided in an apartment over his restaurant.

Following the sale of the modular home to Polson, Duranti continued to make periodic payments to the Bank as called for in the note and security agreement. The Bank on several occasions, when payments were past due, conferred with Duranti. In none of those conferences between October, 1975 and November, 1977, did Duranti give the Bank any indication that he no longer owned the modular home. Duranti's responses to various questions asked by agents of the Bank were intended to obscure or disguise from the Bank the fact that he had disposed of its collateral.

In November, 1977 the Bank commenced an action in state court to recover a money judgment against Duranti on the note. In December of that year the Bank's complaint was amended to additionally seek replevin of the modular home. The Bank's first knowledge of the sale by Duranti came in this state court action.

On November 15, 1978 Duranti filed a voluntary petition in Bankruptcy which was accompanied by schedules listing the Bank as a secured creditor with an undisputed claim for $6,076.00. At trial the Bank presented evidence that Duranti was indebted to it for $4,931.96 as of August 31, 1978, and for interest on that sum thereafter at the rate of 12% per annum.

There can be no question that the Bank's security interest was valid against Duranti at the time the modular home was sold. The effect of the sale was to place the collateral securing the Bank's loan out of the reach of the Bank without compensating the Bank for its collateral. This is a classical conversion. That this conversion was willful and malicious is shown by Duranti's failure to inform the Bank of the sale and his continuation of contract payments to the Bank as if his relation with the Bank were unchanged. However, Duranti had, without the Bank's consent, altered the Bank's status from that of a fully secured lender on a loan for personal use to an unsecured lender on a loan for business purposes. The Bank had at no time agreed to lend money to the restaurant business nor to assume an unsecured status. The deliberate disposal of the property of another without authority and without reimbursement is a willful and malicious injury. 9 Am.Jur.2d Bankruptcy § 792.

The defendant's contention that the Bank was not injured is absolutely without merit. Certainly the disposal of the collateral from which the Bank was entitled to seek repayment upon default constituted an immediate and direct injury to the Bank. The Bank's failure to perfect its lien prior to the disposal of the collateral is irrelevant to the injury. Although the Bank by failing to perfect its security interest may not have prevailed against a trustee in bankruptcy or a subsequently perfected creditor, no trustee in bankruptcy was acting nor any competing creditor claiming an interest in the property at the time of its disposal.

Because the value of the property converted was considerably in excess of Duranti's liability to the Bank, there is no basis for finding that any sum less than the full amount of that indebtedness is nondischargeable.

Upon the foregoing opinion which constitutes my Findings of Fact and Conclusions of Law, it is

ORDERED that the plaintiff have judgment in accordance with the demand of the complaint.