In the Matter of John P. RIES and Julie A. Ries, Debtors.

WISCONSIN FINANCE CORPORATION, Plaintiff,

v.

John P. RIES, Julie A. Ries, and Michael Kepler, Trustee, Defendants.

Adv. No. 81–0213.

United States Bankruptcy Court, W. D. Wisconsin.

Aug. 6, 1982.

James D. Sweet, Kassner & Sweet, Madison, Wis., for plaintiff.

Larry A. Haukom, Haukom & Ritchie, Madison, Wis., for defendant.

## DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On December 10, 1979, debtors John and Julie Ries entered into a purchase-money security agreement with Wisconsin Finance Corporation (WFC). The security agreement covered personal property including a piano. WFC perfected the security interest by filing a financing statement with the Dane County Register of Deeds on December 12, 1979. Mr. and Mrs. Ries are in default under this agreement.

Mr. and Mrs. Ries filed a chapter 7 bankruptcy petition on September 4, 1981. At the 11 U.S.C. § 341 meeting on September 28, 1981 the Rieses testified that they had sold the piano to an unnamed third party for $450.00. They further testified that the sale was made without notice to WFC and without WFC's consent. WFC was not paid any proceeds from the sale of the piano.

In this adversary proceeding, filed October 2, 1981, WFC submitted claims for reclamation of the collateral and an order determining that the debt owed by the Rieses to WFC is not dischargeable under 11 U.S.C. § 523(a)(6), or in the alternative that none of the Rieses' debts are dischargeable by virtue of 11 U.S.C. § 727(a)(2). The

dischargeability issue was based on the Rieses' having disposed of the piano. On December 14, 1981, this court entered a default judgment on the reclamation claim in favor of WFC, giving WFC the right to immediate possession of certain items of the collateral. A ruling on the dischargeability issue was reserved until briefs were submitted.

■ The first issue to address is whether the sale of collateral, at some undetermined time, without the consent or knowledge of the secured party and without turning over the proceeds to the secured party, constitutes a ground for denying discharge under 11 U.S.C. § 727(a)(2)(A). This section provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition.

The party objecting to discharge has the burden of proof. *In Re Crane*, 13 B.R. 445, 7 B.C.D. 36 (Bkrtcy.N.D.Ala.1980). Thus, in order for a debtor to be denied his discharge under 11 U.S.C. § 727(a)(2)(A), the objecting creditor must show three things. First, that the debtor transferred, removed, destroyed, mutilated or concealed his property. Second, that he did so within one year of the filing of the petition, and third, that it was done with the requisite intent. In the present case, it is clear that the Rieses did transfer property. However, WFC has failed to establish that this transfer occurred within the one-year period.

■ WFC presented no evidence to establish the date of the transfer of the piano to have been within one year of filing. However, it argued that the Rieses concealed the sale, and that this concealment made the violation ongoing until within one year of filing. Thus, the actual date of sale

would be unimportant. It is true that discharge has been denied where the debtor had begun the concealment more than a year prior to bankruptcy, but the concealment continued into the one-year period. *In Re Baxter*, 27 F.Supp. 54 (S.D.N.Y.1939). However, as the court explained in *In Re Smith*, 11 B.R. 20 (Bkrtcy.N.D.Ohio 1981), this theory of continued concealment is only applicable where the debtor has retained some interest in or control over the concealed property. The court explained:

> Concealment has generally been defined as the transfer of legal title to property to a third party with the retention of a secret interest by the Bankrupt.... However, if the transfer is absolute, even if it defrauds the creditors, the transfer cannot bar discharge. *In Re Hammerstein*, 189 F. 37 (2d Cir. 1911); *In Re Vecchione*, 407 F.Supp. 609 (E.D.N.Y. 1976).
>
> It should be noted that, following these decisions, this court is not holding that all debtors can transfer their property subject to security interests and forever shield themselves from their creditors. The court in *Thompson v. Eck*, 149 F.2d 631 (2d Cir. 1945), held that a bankrupt must retain some legal interest in property before he can be charged with its concealment and preclude his discharge. *See also Groth*, [36 F.2d 41 (7th Cir.)] *supra*. The court in the case of *In Re Vecchione, supra.*, clarified this position by indicating that even though the bankrupt had transferred legal title to his automobile, the fact that he continued to use and thus derive an equitable benefit from the property constituted continuing concealment. Therefore, in cases where the plaintiff can prove that the debtor retained control or an equitable interest in the property, the courts have appropriately denied discharge under the theory of continuing concealment. 11 B.R. at 22.

In the *Smith* case, the court found that the debtor's absolute transfer of secured property more than one year prior to bankruptcy did not constitute a continuous concealment and could not be the grounds for denying discharge. In the present case, no allegation was made or proven that the

Rieses retained any interest in or control over the piano. In the absence of such evidence the court cannot find that a continuous concealment occurred. If this court were to accept WFC's argument that the date the creditor learns of a transfer rather than the date of the transfer itself controls, the one-year period would become virtually meaningless. As noted earlier WFC has not .met its burden of proving that the transfer occurred within the one-year period prior to filing. Thus, WFC has not established one of the three elements necessary to deny a discharge under 11 U.S.C. § 727(a)(2)(A).[1]

■ WFC's next contention is that the Rieses' sale of the piano constituted a willful and malicious injury to property under 11 U.S.C. § 523(a)(6).[2] 11 U.S.C. § 523(a)(6) provides

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Injury under this section includes common law conversion, *In Re Donny*, 19 B.R. 354 (Bkrtcy.W.D.Wis.1982), which was recently defined by the Wisconsin Supreme Court:

'Conversion is often defined as the wrongful exercise of dominion or control over a chattel.' Conversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained. Where, however, there is no wrongful taking and the defendant rightfully comes into possession of the chattels, a demand by the rightful owner and a refusal by the alleged tortfeasor are necessary elements of the tort. *Production Credit Asso. of Madison v. Nowatzski*, 90 Wis.2d. [344] at 353–54 [280 N.W.2d 118] (citations omitted).

In *In Re Duranti*, 1 B.R. 54 (Bkrtcy.W.D. Wis.1979) this court found the sale of se-

cured property to be conversion. "The effect of the sale was. to place the collateral securing the Bank's loan out of the reach of the Bank without compensating the Bank for its collateral. This is a classical conversion." 1 B.R. at 56.[3]

Although conversion clearly constitutes an injury, the injury must be willful and malicious to be excepted from discharge. Courts have had little trouble defining willful as intentional or deliberate. *In Re Giantvalley*, 14 B.R. 457, 458 (Bkrtcy.D.Nev. 1981), *In Re Meyer*, 7 B.R. 932, 933, 3 C.B. C.2d 534, 535 [1978–81 Transfer Binder] BANKR.L.REP. (CCH) ¶ 67,777, at 78,477 (Bkrtcy.N.D.Ill.1981), *In Re McCloud*, 7 B.R. 819, 825–26, 3 C.B.C.2d 701, 709 [1978–81 Transfer Binder] BANKR.L.REP. (CCH) ¶ 67,818, at 78,561 (Bkrtcy.M.D.Tenn.1980). In this case the Rieses' acts were clearly deliberate and intentional. However, the question of what constitutes malice, when the debtor has willfully sold secured property, has troubled many courts. From an analysis of the various cases construing 11 U.S.C. § 523(a)(6) there appear to be two general approaches taken in construing "malice". Both begin with a definition of malice as "intent to harm". *In Re Hodges*, 4 B.R. 513, 517, 6 B.C.D. 531, 2 C.B.C.2d 566, [1978–81 Transfer Binder] BANKR.L.REP. (CCH) ¶ 67,678, at 78,182 (Bkrtcy.W.D.Va. 1980), *In Re Langer*, 12 B.R. 957, 959, 7 B.C.D. 1323, 1325 (D.C.N.D.1981), *In Re Giantvalley, infra* at 458. However, courts have interpreted "intent to harm" in different ways.· One line of cases holds that unless the debtor's purpose in selling secured property was to do harm to the creditor, the debt is dischargeable. *In Re Hodges*, 4 B.R. at 517, 6 B.C.D. at 533, 2 C.B.C.2d at 571, BANKR.L.REP. (CCH) ¶ 67,678, at 78,185. *In Re Gentis*, 10 B.R. 209, 213 (Bkrtcy.S.D.Ohio 1981), *In Re Nelson*, 10 B.R. 691, 4 C.B.C.2d 548, 549 (Bkrtcy.N.D. Ill.1981), *In Re McLaughlin*, 14 B.R. 773

---

1. Because WFC has not established the requisite time period, it is unnecessary to discuss the third element, intent.

2. The Rieses appear not to dispute that sale of the piano constituted a willful and malicious injury. *See* Defendant's Brief at p. 2.

3. Although *Duranti* was decided under section 17(a)(8) of the Bankruptcy Act, this section is sufficiently similar to 11 U.S.C. § 523(a)(6) to permit the use of an Act case in interpreting the Code. *See Donny*, at 357–58, n.3.

(Bkrtcy.N.D.Ga.1981). Thus, where the debtor has another purpose in selling the collateral, such as raising money for living expenses, *In Re Hodges, infra, In Re McLaughlin, infra*, or where the debtor remits a portion of the proceeds to the secured creditor, *In Re Langer, infra, In Re Hawkins*, 6 B.R. 97, 6 B.C.D. 1054 (Bkrtcy. W.D.Ky.1980), or the debtor continues to make loan payments, *In Re Harris*, 8 B.R. 88, 7 B.C.D. 437 (Bkrtcy.M.D.Tenn.1980), the debt will be found dischargeable.

The disadvantage of this definition of malice was described by the court in *In Re Nelson*:

> The Hodges case places an almost insurmountable burden on creditors when their secured property is sold, and a burden this Court is not entirely comfortable with.
>
> When the injury is directly to a person or to the property of another, a standard of intentional harm is understandable.... But when the injury is conversion of secured property such a standard virtually renders the remedy meaningless. Under what circumstances, for instance, would a debtor ever sell secured property out of malice? 4 C.B.C.2d at 549.

Other courts have found that the intent to do harm definition of malice does not require personal ill will or hatred. Instead, what is required is that the debtor know that his act will harm another and proceed in the face of that knowledge. *In Re Giantvalley*, 14 B.R. at 458, *In Re McCloud*, 7 B.R. 819, 825–26, 3 C.B.C.2d 701, 709 (Bankr.M.D.Tenn.1980). *In Re Donofrio*, 19 B.R. 734 (Bkrtcy.N.D.Ohio 1982), *In Re Obermeyer*, 12 B.R. 26 (Bkrtcy.N.D.Ohio 1981). This is the definition of malice adopted by this court in *In Re Donny*, under somewhat different circumstances:[4]

> Donny knew to whom the property in question belonged, and although there is no reason to doubt his intention to restore the funds at some future date, he knew and intended that Danekas would suffer the loss or risk of loss through his exercise of dominion over the sale proceeds. Willful and malicious in this context does

not require that the debtor be motivated by personal hatred, spite or ill will in harming the victim. It is sufficient that the debtor know that an injury will be caused and proceed in the face of this knowledge to carry out the actions which will cause the injury. In this case Donny possessed the requisite intention and knowledge. 19 B.R. at 359 (footnote omitted).

Thus, under the *Donny* standard, all that is required is that the Rieses knew that in selling the piano, they would be harming WFC. It appears that there must actually be knowledge; a finding that the debtors should have known that harm would result will not suffice. As the court in *In Re Lewis*, 17 B.R. 46, 48 (Bkrtcy.W.D.Ark.1981) explained:

> [W]hen a defendant has disposed of collateral without permission but with some notion, however erroneous it would appear to be, that he has a right to dispose of it, there can be no finding of willful and malicious conversion.

■ The debtor's knowledge can be inferred, of course, from his experience in business, his concealment of the sale, or his admission that he read the security agreement which forbade the sale of the collateral. This approach was used by the bankruptcy court of the Northern District of Georgia in *In Re Ricketts*, 16 B.R. 833 (Bkrtcy.N.D.Ga.1982). The court first discussed *In Re McLaughlin, infra*, an earlier case in which the court had found a sale of secured property not to be a willful conversion. The court then distinguished the cases:

> Mr. Ricketts, on the other hand, is a businessman, involved in selling automobiles, and more familiar with the import of the documents involved in the transaction between himself and the bank. He admits signing the promissory note and financing statement, and admits being familiar with such documents. Mr. Ricketts knew or should have known the boat stood as collateral for his debt, and that the bank would be left with an unsecured note when he sold the collateral. On the

---

4. *Donny* involved the sale of property in which the debtor had no ownership interest.

facts of this case we must find that Mr. Ricketts' actions amounted to a wilful and malicious injury to the property of another entity. We find intent to do harm in his conversion of the bank's rights in its security interest, when he knew or should have known the consequences of this action to the bank. 16 B.R. at 834.

In the present case, the Rieses apparently were not in business. Although, I am somewhat uneasy about assuming that they had read the security agreement, it is reasonable to suppose that they knew what it meant or that they understood that the sale of the collateral would harm WFC. This element is sufficiently common to consumer credit transactions, and these transactions are sufficiently common in modern life of the sort experienced by these debtors, that I believe it would be unrealistic to presume the debtors' ignorance with regard thereto. Therefore, I am convinced that the debt should be found nondischargeable.

■ The final issue is how much of the debt to WFC should be excepted from discharge. WFC contends that the entire debt of $2,924.70 owed to WFC should be excepted from discharge. The Rieses argue that only the amount the collateral sold for, $450.00, should be excepted. WFC's argument appears incorrect. Section 523(a)(6) provides that any debt for malicious and willful injury not be discharged. In the present case, the only part of the debt owed to WFC which is for a willful and malicious injury is the amount the debt would have been reduced by, had WFC been able to repossess and sell the piano. The remainder of the debt is not for willful and malicious injury but merely the result of a loan transaction. As the court in *In Re Pommerer*, 10 B.R. 935, 941, 4 C.B.C.2d 766 (Bkrtcy.D.Minn.1981) explained: "The liability arising from the conversion is measured by the market value of the property converted." [5] *See also In Re Howard*, 6 B.R. 256 (Bkrtcy.M.D.Fla.1980).

■ However, the Rieses' contention that the price the piano sold for is the amount to be excepted is also incorrect. WFC is entitled to have the amount it would have been able to realize, had it repossessed and sold the piano, declared nondischargeable. Although this may be the same as the amount it sold for, this is not necessarily the case. WFC argues that because the debtors sold the piano, it is impossible to determine the actual value of the piano. However, it should be possible for WFC to obtain evidence of the value of a piano of the same type and age and similar condition. The Rieses may also obtain such evidence. Because no evidence has been presented of the actual value of the piano, judgment upon the determination that the debt created by the conversion of the piano must await further hearing. Such a hearing may be scheduled upon request of either party.

---

**5.** But see *In Re Ricketts*, 16 B.R. 833, 835: The debt created by Ricketts' wilful and malicious injury here is that the bank is no longer secured in the amount of the value of this collateral. There is no way to value this loss of security, as debtor has placed it beyond the reach of the bank.... Therefore we find that the entire balance of the debt owing to Trust Company is nondischargeable.