**In re Edward Frank HABLE, Linda Marie Hable, Debtors.**

**Bankruptcy No. WF7–84–00405.**

United States Bankruptcy Court, W.D. Wisconsin.

June 18, 1984.

Terrence J. Byrne, Wausau, Wis., for debtors.

Sheree L. Gowey, Asst. U.S. Atty., Madison, Wis., for Farmers Home Administration.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER VOIDING LIEN

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Debtors Edward F. and Linda M. Hable, by Attorney Terrence J. Byrne, having filed an Application for Avoiding Lien, and the United States of America Farmers Home Administration (FmHA), by Attorney Sheree L. Gowey of the United States Attorney's Office, having filed an Objection to said Application; and the matter being submitted on briefs; the Court, having considered the briefs submitted and the complete record and file herein, and being fully advised in the premises, FINDS THAT:

1. "The sole issue in this case is whether the debtors can avoid liens on tools of the trade in excess of the $750.00 limit under § 522(d)(6) by use of the 'wild card' exemption under 522(d)(5)." Letter Brief of FmHA (filed June 14, 1984).

2. This issue has been resolved by Judge Martin's decision in *Rameker v. Hollinsed (In re Hollinsed)*, 54 B.R. 155, (Bankr.W.D.Wis.1984).

CONCLUSION OF LAW

The Debtors may avoid the FmHA lien.

ORDER

IT IS ORDERED THAT the security interest of the United States of America Farmers Home Administration is voided to the extent that it impairs a sec. 522(d) exemption to tools of the trade of the Debtors.

**In re Richard Lee NASH, Sr., Kathleen Nash, d/b/a Community Farms, Debtors.**

**NORTHERN INVESTMENT COMPANY, a Wisconsin corporation, Plaintiff,**

**v.**

**Richard Lee NASH, Sr., and Kathleen Nash, d/b/a Community Farms, Defendants.**

**Bankruptcy No. EF7–83–00092. Adv. No. 83–115.**

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 21, 1985.

Steven R. Cray, Colbert, Frasch, Norseng & Cray, S.C., Chippewa Falls, Wis., for plaintiff.

Keith D. Muschinske, Brunner, Sykes & Muschinske, Rice Lake, Wis., for debtors/defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DECLARING DEBT NON–DISCHARGEABLE [1]

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Northern Investment Company (NIC), by Wiley, Rasmus, Colbert, Frasch, Norseng & Cray, S.C., having filed Complaints to have debts declared non-dischargeable; and Debtors Kathleen and Richard Lee Nash and Mary A. and Raymond O. Haynes, by Brunner, Sykes & Muschinske, having filed Answers; and a trial having been held; and NIC appearing by Attorney Steven R. Cray; and the Debtors appearing by Attorney Keith D. Muschinske; the Court, being fully advised in the premises, FINDS THAT:

1. Beginning in September of 1980, the Debtors, collectively doing business as Community Farms, purchased a total of 41 head of cattle and entered into a series of notes and security agreements with NIC.

2. These transactions culminated on February 16, 1982, with a consolidated note

---

**1.** An identical Decision and Order is entered this day in *In re Haynes,* 54 B.R. 20 (Bankr.W.D. Wis.)

and security agreement. In the final security agreement, the Debtors pledged 36 Holstein cows, 5 Guernsey cows, a 1956 truck and a 1212 David Brown diesel tractor as collateral. Only part of the Debtors' herd was collateralized, there were no ear tags nor any other objective method used to distinguish the secured cattle.

3. The Debtors' January 21, 1983, bankruptcy petitions show NIC as a secured creditor. The Debtors described NIC's collateral as 4 cows, a 1956 Ford truck and a David Brown tractor. Mr. and Ms. Haynes did not schedule any livestock; Mr. and Ms. Nash scheduled 28 head of cattle.

4. All of the security agreements between the Debtors and NIC required that secured property be kept at the Debtors' place of business and not be sold or disposed of without the written consent of NIC. Said agreement also prohibited waste or deterioration. The Debtors testified that they did not have actual knowledge of these provisions.

5. Exhibit 16 was offered by the Debtors as an accounting of the collateralized cattle, to-wit: Prior to February 16, 1982, 33 head were sold at market on account of injury or disease, 2 head died (disposition unstated) and 1 head was injured (disposition unstated); after February 16, 1982, and before Janury 21, 1983, 7 head were sold at market; after January 21, 1983, 3 head died (disposition unstated) and 2 head were sold to a rendering service.[2]

6. The proceeds of the sale of the secured cattle were applied toward Community Farm business obligations—including NIC note payments.

### Discussion

7. A debt is non-dischargeable to the extent that it is for willful and malicious injury by the debtor. 11 U.S.C. sec. 523(a)(6).

8. Common law conversion is an "injury" under section 523(a)(6); a sale of secured property which is contrary to the security agreement constitutes a conversion. *In re Ries,* 22 B.R. 343, 346 (Bankr. W.D.Wis.1982).

9. A sale of secured property is "willful and malicious" when it is made with the knowledge that the secured creditor will be harmed. *Id.* at 347.

10. A debtor who enters into a security agreement is presumed to know that a sale of secured property would harm the secured creditor. *Id.* at 348.

11. The evidence presented by the Debtors in this adversary proceeding was not sufficient to rebut the presumption of knowledge of harm to NIC.

### CONCLUSION OF LAW

The debt owed to NIC is for willful and malicious injury by the Debtors.

### ORDER

IT IS ORDERED that the debt owed to Northern Investment Company by the above captioned Debtors be, and the same hereby is, declared NON–DISCHARGEABLE.

---

2. The observant reader will notice that the Debtors have accounted for 48 of the 41 cattle pledged to NIC. When this discrepancy was brought out at trial, the Debtors explained that Exhibit 16 was reconstructed from memory and that some of the cattle accounted for were not collateralized to NIC. Even if only 41 of the accounted for cattle can be attributed to the NIC portion of the herd, the Debtors' version of the facts rests upon the inherently incredible assertion that the NIC portion of their herd was entirely wiped out while, at the same time, only 7 head of unpledged cattle were removed from service.