**In re James Starkey HOWARD, III, Debtor.**

**Carol A. MORRISON, Trustee, Plaintiff,**

**v.**

**James Starkey HOWARD, III, Defendant.**

**Bankruptcy Case No. S–84–01227–3. Adv. No. S–85–0017–AP.**

United States Bankruptcy Court, E.D. North Carolina.

Dec. 3, 1985.

Carol A. Morrison, Fayetteville, N.C., for trustee.

William E. Brewer, Jr., Russell & Brewer, P.A., Raleigh, N.C., for debtor.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

This adversary proceeding is an objection to discharge under 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4) brought by the debtor's chapter 7 trustee, Carol A. Morrison. The trial was held in Raleigh, North Carolina on October 25, 1985.

### JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J), which this court may hear and determine.

### FACTS

The debtor, Dr. James Starkey Howard, III, filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 16, 1984. The debtor is a psychiatrist and has practiced his profession in several states, including North Carolina, Virginia, and California. Early in his career, in 1974, while practicing in Virginia, Dr. Howard was exposed to liability when a medical malpractice suit was filed. According to Dr. Howard's former wife (Janet Allen Howard), the debtor, to avoid the effect of an adverse verdict, made transfers of his real property to his wife and moved valuable antiques out of the state of Virginia. Later, after the debtor won the malpractice action, the transfers were reversed.

The debtor's next legal problem was divorce litigation in which a divorce settlement gave Janet Allen Howard a deed of trust on Dr. Howard's home in Chatham County, North Carolina.

Dr. Howard remarried and moved to California where, in 1978, he again was sued for medical malpractice. The debtor joined the United States Army and while stationed in Germany, the California malpractice litigation was stayed pursuant to the Soldiers' and Sailors' Relief Act (50 U.S.C. § 521).

Although the litigation was stayed, it presented a potential liability. While Dr. Howard was in Germany, he established Chatham Hall Foundation, Inc. ("Chatham Hall"), a North Carolina nonprofit charitable corporation controlled by Dr. Howard, his second wife (Jane Davis Howard), and the debtor's attorney. In January, 1980, Dr. and Mrs. Howard conveyed the house in Chatham County, North Carolina, to Chatham Hall thereby protecting the house from any judgment arising from the California litigation.

Subsequently, in late 1981, the second Mrs. Howard left the debtor, and Dr. Howard became involved in his second round of divorce litigation. During this time, more transfers were made to Chatham Hall Foundation, Inc. In addition to the house which was conveyed in January, 1980, all of Dr. Howard's antiques and some additional land were transferred to Chatham Hall by deed dated August 19, 1982. These transfers were not acknowledged by Jane Howard, however, until several months later, and the conveyances were not recorded until March 31, 1983.

After Dr. Howard's second divorce, Chatham Hall was controlled by the debtor and his mother. Corporate formalities were ignored, and Chatham Hall's charter was suspended by the State of North Carolina on September 1, 1983; it was not reinstated until November 5, 1984, several months after the debtor's bankruptcy petition.

Although the house, land, and antiques were owned by Chatham Hall Foundation, Inc., the debtor treated the assets as his own. The debtor lived in the house furnished with valuable antiques and listed the assets as his own on financial statements given to the State Employees' Credit Union on June 24, 1981, to First Citizens Bank and Trust Company on April 19, 1983, and to Central Carolina Bank and Trust Company on May 2, 1983.

It is abundantly clear that Chatham Hall Foundation, Inc. was nothing more than a

ruse to protect Dr. Howard's assets from his creditors.

The malpractice litigation which spawned Chatham Hall eventually resulted in a default judgment in California for $75,000 against the debtor in August, 1982. The judgment creditor, however, did not seek to enforce the judgment against the debtor's North Carolina assets until August, 1983, and a North Carolina judgment was not obtained until May, 1984. That action precipitated more activity on the part of the debtor. Dr. Howard attempted to donate the house, the surrounding property, and all of his antiques to the North Carolina Foundation for Historic Preservation. The gift, however, was declined because Dr. Howard could not arrange for an endowment to maintain the property.

In July, 1984, Dr. Howard told his friend, Dr. Robert Paul Moffie, that he intended to give away the Chatham County house and all of his antiques and move to California. Dr. Moffie told the debtor that he wanted to purchase the house, and a sale was arranged.

Dr. Howard agreed to sell the house to Dr. Moffie for the amount outstanding under the deed of trust held by Dr. Howard's first wife. The debtor also agreed to include the acreage adjacent to the house if Dr. Moffie would purchase a 1955 Mercedes 190SL automobile at a cost of $12,500 for Dr. Howard's girlfriend, Mary Martha Uzzle. Dr. Howard also agreed to sell Dr. Moffie the burglar alarm system if Dr. Moffie would give Ms. Uzzle $6,000.

Dr. Moffie paid the first deed of trust ($87,585.17), bought Ms. Uzzle the 1955 Mercedes for $12,500, and gave Ms. Uzzle a check for $6,000. In turn, Chatham Hall, by deed executed by Dr. Howard as corporate President, and his mother, Peggy B. Daino, as corporate Secretary, conveyed the house and surrounding acreage to Dr. Moffie; the deed was recorded on August 9, 1984. Dr. Moffie did not purchase the antiques, but the debtor had other plans for them.

Some of the antiques were transferred to Craig & Tarlton, a Raleigh, North Carolina antique dealer, in exchange for a William and Mary tester bed, circa 1710, valued at from $50,000 to $75,000.

The debtor then arranged for a transfer of the antiques to the Historic Hope Foundation, Inc. ("Historic Hope"). Unlike Chatham Hall, Historic Hope is a *bona fide* charitable organization established in 1965 to preserve the Hope Mansion and the King-Bazemore House as historic attractions in Bertie County, North Carolina.

Dr. Howard orally offered the antiques to Historic Hope on August 4, 1984, and a Contract of Gift dated August 15, 1984, was executed by Dr. Howard as President of Chatham Hall.

The antiques were moved from the Chatham County house between August 13 and August 17, 1984, and most were delivered to Craig & Tarlton to be held for Historic Hope. Some antiques, however, were delivered to the debtor's mother, Mrs. Daino. The tester bed was included in the gift, but curiously, possession of the bed (and several other items including those in the possession of Mrs. Daino) was not to be given to Historic Hope until "released" by Chatham Hall. Mr. Sam Tarlton of Craig & Tarlton, testified that Dr. Howard told him that he wanted to use the bed for some short period of time. Dr. Moffie testified that Dr. Howard told him that he intended to take the bed with him to California and to make the bed the centerpiece of his new California home.

In addition to the transfer of the house and antiques, the debtor made several other transfers prior to his bankruptcy. On July 28, 1984, Dr. Howard gave his son, as a 21st birthday present, an 1866 model Winchester rifle. He also sold an antique gun to Dr. Moffie for a purchase price of $1,500 which was paid on August 7, 1984.

The evidence before the court is not sufficient to establish the value of the Chatham County house, but the antiques transferred to Chatham Hall, and by Chatham Hall to Historic Hope, were worth at least $150,000.

The court finds that the establishment by the debtor of Chatham Hall Foundation, Inc., the transfer to Chatham Hall by the debtor of his house, land, and antiques, the transfer by Chatham Hall of the antiques to Historic Hope, the transfer of the house and land to Dr. Moffie, the transfer of the rifle to Dr. Howard's son, and the transfers of the 1955 Mercedes automobile and of $6,000 to Ms. Uzzle were done with the intent to hinder, delay or defraud creditors, and for the purpose of transferring, removing, or concealing property of the debtor. The conveyance of the house and antiques to Chatham Hall was a continuing concealment which persisted to a time within one year of the debtor's bankruptcy. The transfers from Chatham Hall to Historic Hope, to Dr. Moffie, to the debtor's son, and to Ms. Uzzle all occurred within one year of the debtor's bankruptcy petition.

The court further finds that none of these transfers were reflected on the debtor's bankruptcy schedules, and that the debtor's failure to disclose these transactions constitutes the making of a false oath or account within the meaning of 11 U.S.C. § 727(a)(4)(A).

Finally, the court finds that the debtor failed to attend the trial of this adversary proceeding as required by Bankruptcy Rule 4002(2). Counsel for the debtor advised the court that Dr. Howard was aware of the proceeding, but that the debtor elected not to attend the trial in favor of attending a job interview in Hawaii. The court finds that the debtor's absence is unjustified.

## DISCUSSION AND CONCLUSIONS

One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' This purpose of the act has been again and again emphasized by the courts as being a public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934).

The discharge provided in 11 U.S.C. § 727 "is the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6340.

The solicitude of Congress, however, stops at the debtor who does not measure up to that appealing image ("honest but unfortunate debtor") and who has engaged in grossly irresponsible or fraudulent conduct, has been recalcitrant during the case or has overutilized the privilege. Riesenfeld, *Creditors' Remedies and Debtors' Protection* 729 (3d ed. 1979).

In view of the policy favoring a fresh start, provisions which would deny a discharge should be construed "liberally in favor of the debtor and strictly against the creditor." *In re Greenwalt,* 48 B.R. 804, 805 (D.C.D.CO 1985); 4 *Collier on Bankruptcy,* ¶ 727.01A at 727–9 (15th ed. 1985).

■ Dr. Howard's intentional disregard for his obligation under Bankruptcy Rule 4002(2) to attend the trial of the objection to his discharge is in itself sufficient to deny the debtor's discharge. 4 *Collier on Bankruptcy* ¶ 727.09 at 727–67 (15th ed. 1985); *Matter of Simon,* 297 F. 942 (2d Cir.1924); See also *Matter of Kauffman,* 675 F.2d 127 (7th Cir.1981).

Additionally, the evidence overwhelmingly supports a denial of the debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A).

11 U.S.C. § 727(a)(2)(A) provides that the court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transfer-

red, removed, destroyed, mutilated, or concealed—

    (A) property of the debtor, within one year before the date of the filing of the petition.

Counsel for the debtor contends that the transfers made by Dr. Howard to Chatham Hall Foundation, Inc., occurred more than one year prior to the filing of the petition. It is true that Chatham Hall received a conveyance of the Chatham County house and the antiques prior to one year before Dr. Howard's bankruptcy. Chatham Hall, however, by virtue of its lapsed charter, did not exist at the time of the debtor's bankruptcy. Furthermore, Chatham Hall was nothing more than a sham designed to conceal and protect the debtor's assets from his creditors. This was a continuing concealment which lasted well beyond one year prior to the filing of the debtor's petition.

Continuing concealment sufficient to bring transfers within the one year statutory period of 11 U.S.C. § 727(a)(2)(A) may be found when the debtor transfers legal title to property outside the one year period, but retains a beneficial or equitable interest in the property into the one year period. *Matter of Kauffman*, 675 F.2d 127, 128 (7th Cir.1981); *Matter of Vecchione*, 407 F.Supp. 609 (E.D.N.Y. 1976); *In re Hooper*, 39 B.R. 324, 327 (Bankr.N.D.OH 1984); *Matter of Ries*, 22 B.R. 343 (Bankr.W.D.WI 1982); *In re Smith*, 11 B.R. 20 (Bankr.N.D. OH 1981). If the debtor continues to use, enjoy, and control the property transferred as if the property remained his own, then he retains a beneficial interest in the property. *In re Cadarette*, 601 F.2d 648 (2d Cir.1979); *Matter of Vecchione*, 407 F.Supp. at 617.

Dr. Howard clearly continued to use the house and antiques that he had transferred to Chatham Hall as his own from the time of the transfers until shortly before filing his petition. Dr. Howard lived in the house, the antiques remained in the house, and he used them until they were transferred to Historic Hope. He transferred some of the antiques in exchange for a valuable William and Mary tester bed which, according to one witness, he intended to use or keep as his own. Even after the transfer to Historic Hope, some of the antiques, including the bed, were not to be given to Historic Hope by Craig & Tarlton until "released" by Chatham Hall. Dr. Howard also listed the property conveyed to Chatham Hall as his own in various financial statements given to lenders after the conveyances. The listing of property as an asset in a personal financial statement after the date of the transfer indicates the retention of a beneficial interest in and control of the property listed. *Matter of Kauffman*, 675 F.2d at 128.

The discharge should also be denied pursuant to 11 U.S.C. § 727(a)(4)(A) for the debtor's failure to disclose the transfers in the debtor's schedules.

A judgment denying the debtor's discharge will be entered.