In re Orlo Alden SYRTVEIT, Debtor.

FIRST NATIONAL BANK OF CROSBY,
a National Banking Association,
Plaintiff,

v.

Orlo Alden SYRTVEIT, Defendant
and Debtor.

Bankruptcy No. 88–40861.
Adv. No. 289/0037.

United States Bankruptcy Court,
D. Montana.

Sept. 21, 1989.

James A. Patten, Billings, Mont., for debtor/defendant.

Martha C. Carlson, Billings, Mont., for plaintiff.

Carey Matovich, Billings, Mont., trustee.

Neal Jensen, Great Falls, Mont., Asst. U.S. trustee.

ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, the Plaintiff First National Bank of Crosby (Bank) has filed a Complaint against the Defendant Chapter 7 Debtor objecting to his discharge under 11 U.S.C. Section 727.[1] Trial of the case was held on August 15, 1989. This Court has jurisdiction under 28 U.S.C. § 157(b)(2).

The Debtor filed for relief under Chapter 7 of the Code on December 8, 1988. In his original schedules the Debtor listed among his assets two automobiles and a retirement fund of $12,885.33. During the course of administration of the estate, the Bank conducted a Rule 2004 examination which disclosed that Debtor transferred 5½ acres with improvements in September, 1987, and a town lot to a relative at the same time. Initially the Debtor claimed the transfer of the 5½ acre tract was in satisfaction of a debt of $22,000.00 owed to the relative. At trial, he recanted that testimony and concluded there was no debt owing and his testimony had been falsely given. The transfer of both parcels were made to avoid creditor collection efforts. However, in his 1988 income tax return (calendar year 1988), the Debtor listed rental income from the town lot and took depreciation on the improvements situated on the 5½ acres. During the course of the Rule 2004 examination Debtor further admitted he owned or had an interest in unscheduled assets in a bank account with a credit union in Canada, a bank account with Daniels–Sheridan County Federal Credit Union, a seller's interest in a Contract for Deed, and three additional motor vehicles. Debtor amended his schedules on April 14, 1989, to include two additional secured creditors, but no other assets. On the eve of trial, August 14, 1989, Debtor filed another

---

1. The Complaint also sought relief under 11 U.S.C. Section 523(a)(2)(B), but that count has been abandoned by the Plaintiff.

amendment to the schedules which listed three additional motor vehicles, a deposit of money with Daniels–Sheridan Credit Union in the sum of $3,200.00, a Contract for Deed with Chuck Merrill, Kromer, North Dakota, in default, with a value of $5,000.00. From the original bankruptcy file, it is apparent that Debtor also has two additional retirement accounts with his employer, which brings the total of his retirement accounts to over $99,000.00, rather than $12,885.23 as scheduled.[2]

Debtor at trial stated his original schedules were not complete or accurate because either his former counsel had advised him not to schedule certain assets such as motor vehicles because of their low value, or he had simply forgotten or overlooked the omission. Accordingly, his confession as to ownership interest in said assets was made by the Debtor, but he now defends in the adversary proceeding on the defense that he had no intent to defraud his creditors.

11 U.S.C. Section 727 as is pertinent to the facts in this case provides:

"(a) The court shall grant the debtor a discharge unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title [11 USCS §§ 101 et seq.], has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

*  *  *  *  *  *

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account:"

With regard to the false oath provisions, this Court held in *In re Bastrom,* 7 Mont. B.R. 1, 11–12, 106 B.R. 223 (Bankr.Mont. 1989):

"The primary purpose of § 727(a)(4)(A) is to ensure that dependable information is supplied to those interested in the administration of the bankruptcy estate so they can rely upon it without the need for the Trustee or other interested parties to dig out the true facts through examinations or investigations. *Martin,* supra, [88 B.R. 319] at 323; *In re Diodati,* 9 B.R. 804, 807 (Bankr.Mass.1981). Fraudulent intent will be imputed if non-disclosed or scheduled assets have substantial value. *In the Matter of Galbraith,* 17 B.R. 302, 305 (Bankr.M.D.Fla.1982); *In re Topping,* 84 B.R. 840, 842 (Bankr.M.D.Fla. 1988).

*  *  *  *  *  *

In order to sustain an objection to discharge under 727(a)(4)(A), the evidence must be established: (1) That the Debtor made a false oath or account in connection with his bankruptcy proceeding; and (2) that such false oath or account was knowingly and fraudulently made. *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984). The false oath or account must be related to a material fact. *In re Kessler,* 51 B.R. 895, 899 (Bankr.Kan.1985); *In re Bobroff,* 58 B.R. 950, 952 (Bankr.E.D.Pa. 1986). A material omission from the Debtors' Chapter 7 schedules, or a false answer on a statement of financial affairs may constitute a false oath for purposes of § 727. *Martin* [88 B.R. 319] at 323; *Comprehensive Accounting Corp. v. Morgan,* 43 B.R. 24 [264], 271 (Bankr. E.D.Tenn.1984). It may be inferred from the circumstances that the Debtors acted 'knowingly and fraudulently' in omitting a material fact. *In re Braidis,* 27 B.R. 470, 472 (Bankr.E.D.Pa.1983); *Bobroff,* at 953."

It is material to this proceeding that debtors sign the bankruptcy schedules and statement of affairs "under penalty of perjury", with the statement that the information supplied was true and correct to the best of their knowledge, information and belief.

2. The Debtor claims the retirement accounts as exempt property, but that matter is presently under contest by the Trustee. The Trustee has also commenced proceedings to recover transfers of the real property made to relatives as fraudulent transfers.

*In re Woodson,* 839 F.2d 610, 614 (9th Cir.1988), specifically admonishes:

"As *Collier* notes, '[t]he scheduling of interests in property, both real and personal, is a very important duty, and the intentional and fraudulent omission of property from sworn schedules will amount to an offense punishable under the Criminal Code ...' 3 *Collier* ¶ 521.06[3] and 521–24; see *Payne v. Wood,* 775 F.2d 202, 205 (7th Cir.1985) ('[T]he operation of the bankruptcy system depends on honest reporting'), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986)."

Moreover, the Bank, an objecting creditor, has the burden to prove by clear and convincing evidence that the Debtor should be denied a discharge. *In re Luthje (Luthje v. Luthje),* 7 Mont.B.R. 791, 793, 107 B.R. 292 (Bankr.Mont.1989), citing *In re Cutignola,* 87 B.R. 702, 706 (Bankr.M.D.Fla. 1988). Accordingly, Section 727 is to be construed liberally in favor the debtor and strictly against the objecting creditor. *In re Adeeb,* 787 F.2d 1339, 1342 (9th Cir. 1986), *Luthje,* supra at 293.

As to § 727(a)(4)(A), making a false oath or account, two elements must thus be present under this subsection, namely, (1) debtor's oath must have been knowingly and fraudulently made; and (2) it must have been related to a material fact. The Court finds Debtor, in filing his original schedules, knowingly made a false oath with fraudulent intent in failing to list material matters concerning his assets. The materiality requirement under this section depends on whether the false oath was pertinent to the discovery of assets or past transactions. *In re Butler,* 38 B.R. 884, 889 (D.Kan.1984). In failing to list three additional motor vehicles valued at $1,750.00 in the amendments, a Contract for Deed valued at $5,000.00 and a bank account valued at $3,200.00, the creditors and Trustee were hindered from discovering assets. Fraudulent intent, i.e., actual intent, must be shown, *Luthje,* supra at 292, but such intent may be proven or established by circumstantial evidence or by inference drawn from a course of conduct, for rarely, if ever, will the debtor admit to fraudulent intent. *In re Devers,* 759 F.2d 751 (9th Cir.1985). *In re Martin,* 88 B.R. 319, 323 (D.Colo.1988), holds:

"A material omission from the debtor's Chapter 7 schedules, or a false answer on a statement of financial affairs may constitute a false oath for purposes of § 727."

*Martin,* supra at 324, in accord with 4 *Collier on Bankruptcy,* § 727.02[3] (15th Ed.1984), also states:

"True, a false statement in the bankruptcy schedules or statements of financial affairs caused by mere mistake or inadvertence is not sufficient to require denial of discharge, because the debtor must have fraudulently intended to make the false oath or account. Nevertheless, 'the courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may give rise to the level of fraudulent intent necessary to bar a discharge.' *Diodati,* supra, 9 B.R. at 808; *see also Bobroff,* supra, 58 B.R. [at] 953 ('[t]he requisite intent under § 727 may be predicated on evidence of a pattern of reckless and cavalier disregard for the truth'); *Cycle Accounting Services,* supra, 43 B.R. at 273 (reckless indifference to the truth is sufficient to deny discharge)."

The circumstances here, coupled with Debtor's weak and inconsistent statements under oath, show by clear and convincing evidence that Debtor embarked upon a pattern of conduct to defraud his creditors, beginning 15 months before bankruptcy, when he transferred property to relatives without consideration, and continuing to the date of the bankruptcy petition filing when he failed to disclose, not one but three automobiles, a Contract for Deed and a bank account. All of such evidence shows a pattern of conduct which belies his duty for faithful performance and the need for detail and accuracy in his bankruptcy schedules. Moreover, his statements in the Rule 2004 examination when he told a different story regarding the land transfers and then had to recant upon trial is further evidence that the Debtor's false schedules

were not caused by mere mistake or inadvertence. And his explanation at trial that he did not list the three vehicles in his schedules (thereby conceding he was well aware of their existence) because his former attorney told him not to, is unworthy of belief absence testimony of his former counsel to substantiate the Debtor's story. Finally, the undisputed evidence concerning the land transfers provide the clearest intent of fraud. The transfers took place on September 25, 1987, without consideration, to his relatives. Yet, in 1988, the Debtor treats the real property as his own in declaring rental incomes from the property and using depreciation on the assets in his income tax returns. His schedules or statement of affairs wholly fail to reveal such beneficial and equitable (or legal) interest in the properties. Again, such non-disclosure shows a cunning scheme to mislead his creditors, and turn them away from his assets. While more pertinent under an objection to discharge under § 727(a)(2)(A), regarding transfer within one year of the date of filing, the holding of *In re Howard*, 55 B.R. 580, 584 (Bankr. E.D.N.C.1985), is material to Debtor's fraudulent intent.

> "Continuing concealment sufficient to bring transfers within the one year statutory period of 11 U.S.C. § 727(a)(2)(A) may be found when the debtor transfers legal title to property outside the one year period, but retains a beneficial or equitable interest in the property into the one year period. *Matter of Kauffman*, 675 F.2d 127, 128 (7th Cir.1981); *Matter of Vecchione*, 407 F.Supp. 609 (E.D.N.Y. 1976); *In re Hooper*, 39 B.R. 324, 327 (Bankr.N.D.Oh.1984); *Matter of Ries*, 22 B.R. 343 (Bankr.W.D.Wis.1982); *In re Smith*, 11 B.R. 20 (Bankr.N.D.Oh.1981). If the debtor continues to use, enjoy and control the property transferred as if the property remains his own, then he retains a beneficial interest in the property. *In re Cadarette*, 601 F.2d 648 (2nd Cir. 1979); *Matter of Vecchione*, 407 F.Supp. at 617."

Not only does the Debtor's continued beneficial use of the two real properties, undisclosed in the schedules, show fraudu-

lent intent, but it brings him squarely within the provisions of § 727(a)(2)(A). The Debtor's only defense is that the date of occurrence was outside the one year period, for he concedes the transfers were to insiders, to keep the property from his creditors and without consideration. But Debtor's continued enjoyment of the property's income runs afoul of the holding of *Howard*, supra. Accordingly, this Court finds and holds the Debtor did transfer property of the estate within one year of the filing of the petition, without consideration, to a relative, with the intent to hinder or delay his creditors. I therefore conclude based on the foregoing that the Debtor's general discharge must be denied under § 727(a)(2)(A) and § 727(a)(4)(A) of the Bankruptcy Code.

IT IS ORDERED judgment shall be entered for the Plaintiff First National Bank of Crosby, and against the Defendant Orlo Alden Syrtveit and said Defendant is denied a discharge under § 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(4)(A).

The clerk shall enter judgment.