**In re Matthew S. JORENBY and Angela J. Jorenby, Debtors.**

**Farmers Implement Store Of Mineral Point, Inc., Plaintiff,**

**v.**

**Matthew S. Jorenby and Angela J. Jorenby, Defendants.**

**Farmers Savings Bank, Plaintiff,**

**v.**

**Matthew S. Jorenby and Angela J. Jorenby, Defendants.**

**Bankruptcy No. 07–13708.**
**Adversary Nos. 07–00190, 07–00196.**

United States Bankruptcy Court, W.D. Wisconsin.

June 9, 2008.

J. David Krekeler, Jeffrey D. Friebert, Krekeler Strother, S.C., Madison, WI, for Plaintiff.

Howard A. Young, Middleton, WI, for Defendants.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Matthew and Angela Jorenby filed a voluntary chapter 7 case in September, 2007. Farmers Implement Store and Farmer Savings Bank, plaintiffs, each objected to the discharge of certain debts under § 523(a)(6).

Mr. Jorenby obtained a business loan from Farmers Implement Store ("Store"). The loan was secured by a lien on a tractor. Mr. Jorenby sold the tractor without the Store's knowledge or consent. The security agreement between Mr. Jorenby and the Store is silent on sales of collateral. It does not include a provision which bars the alienability of the collateral, nor is there a provision which requires proceeds from the sale of the collateral to be turned over to the Store.

Mr. Jorenby also obtained a business loan from Farmers Savings Bank ("Bank"). That loan was secured by a dragnet lien on all "equipment, fixtures, inventory, documents," etc. Some of this collateral was sold without the Bank's knowledge or consent in violation of Bank's security agreement.

Both the Store and the Bank objected to discharge of the above debts under 11 U.S.C. § 523(a)(6)—the "willful and malicious injury" provision. The parties stipulated that any debts found nondischargeable as to Mr. Jorenby would also be nondischargeable as to Ms. Jorenby. Trials in the two cases were held consecutively, and the cases were taken under advisement to clarify the meaning of § 523(a)(6).

■ First, "[A] security agreement is effective according to its terms between the parties ...," Wis. Stat. § 409.201. Nothing in the Store's security agreement disallowed the sale of the tractor. Mr. Jorenby was free to sell the tractor, and he did so. There was no conversion and thus, no injury to the store.

The Wisconsin Supreme Court considered the same issue in *Production Credit Association v. Equity Coop Livestock Sales Association*, 82 Wis.2d 5, 261 N.W.2d 127 (Wis.1978) ("*PCA* "). In *PCA*, the security agreement between the debtor and creditor had no language barring alienability of the collateral—in that case, cattle. The debtor sold the cattle without the creditor's consent. (The defendant in the suit was the auctioneer, but the focus was on the debtor's conduct.) In order to establish that a conversion took place under those conditions, the Court stated that the plaintiff "must allege and prove either

that it was in possession of the chattel at the time of the conversion or that it was entitled to immediate possession." *Id.* at 10, 261 N.W.2d 127. The plaintiff was not in possession of the cattle, and would have been entitled to immediate possession of the cattle only if the debtor were in default. *Id.* at 10–11, 261 N.W.2d 127; *see also* Wis. Stat. § 409.503 ("unless otherwise agreed, a secured party has on default the right to take possession of the collateral"). Furthermore, the sale itself did not constitute default, because the agreement did not so provide. "Under the Uniform Commercial Code, a debtor's transfer of property which is subject to a security interest is not wrongful in itself and the transfer does not result in automatic default." *PCA* at 13, 261 N.W.2d 127. Finally, the Court compared Wisconsin case law with the UCC:

> We interpret the Code as incorporating the rationale of the *Peterson* case, i.e., that the debtor may sell the collateral; that the debtor's transfer of collateral will not destroy the secured party's interest; and that if the transfer of collateral occurs at a time when the debtor is not in default (and the transfer is not an event of default), the secured creditor has no immediate remedy against either the debtor or the transferee.

*Id.* at 16–17, 261 N.W.2d 127.

*PCA* held that there was no conversion and dismissed the complaint.

▆ The Store in this case was not in possession of the tractor when it was sold, and it was not alleged that Mr. Jorenby was in default at the time it was sold. Thus there was no conversion. The Store's legal rights are not extinguished by the sale, however.

"The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by s. 409.315...." Wis. Stat. § 409.203. "(1) [A]

security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest ...; and (2) a security interest attaches to any identifiable proceeds of collateral." Wis. Stat. § 409.315. Thus, the Store may retain a security interest in the tractor and in identifiable proceeds from the sale of the tractor. The Store has not alleged that it has received anything short of what the security agreement provided, so its complaint is dismissed.

▆ On the other hand, the Bank's security agreement did not allow Mr. Jorenby to sell his collateral. Thus the Bank was injured. Section 523(a)(6) of the Bankruptcy Code provides: "A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

"Debts found nondischargeable under section 523(a)(6) typically fall within one of two categories: (1) claims by a creditor that the debtor sold collateral subject to a security agreement, thereby depriving the creditor of its secured interest, ... or (2) attempts by creditors to have previously-entered judgments against the debtor found nondischargeable...." *In re Kimzey,* 761 F.2d 421, 425 (7th Cir.1985). Within the first category, the Court of Appeals for the Seventh Circuit has required that the bankruptcy court specifically find that malice is present. In *Kimzey,* the debtor borrowed money from a bank to purchase wax for a third party. When the debtor was paid by the third party, he deposited the money into his personal account instead of paying the bank per the loan agreement. *Id.* at 423. "Since a debt is nondischargeable under [§ 523(a)(6) ] only if the conversion was

both 'willful' and 'malicious,' ... the bankruptcy court's finding that the conversion was intentional is not sufficient." *Id.* at 424. The Court of Appeals reversed the bankruptcy court's ruling that the debt was nondischargeable on this and other grounds.

Although *Kimzey* did not define malice, the case cited with approval a decision from this court discussing the malice standard. *In re Ries* observed that "there appear to be two general approaches taken in construing 'malice.'" 22 B.R. 343, 346 (Bankr.W.D.Wis.1982). "Both begin with a definition of malice as 'intent to harm.'" *Id.* In the first approach, courts require a showing that "the debtor's purpose in selling secured property was to do harm to the creditor." Thus, "where the debtor has another purpose in selling the collateral, such as raising money for living expenses ... or where the debtor remits a portion of the proceeds to the secured creditor ... or the debtor continues to make loan payments ... the debt will be found dischargeable." *Id.* (citations omitted). In the second category of cases, the "definition of malice does not require personal ill will or hatred. Instead, what is required is that the debtor know that his act will harm another and proceed in the face of that knowledge." *Ries* observed that the latter category had been adopted in this court. *Id.* at 347 (citing *In re Donny*, 19 B.R. 354 (Bankr.W.D.Wis. 1982)). Therefore, "all that is required is that the [debtors] knew that in selling the piano, they would be harming WFC. It

appears that there must actually be knowledge; a finding that the debtors should have known that harm would result will not suffice." *Ries* at 347.

There is no dispute that Mr. Jorenby intended to sell the collateral. Mr. Jorenby testified at the hearing that he knew he was injuring the property interests of the plaintiffs when he sold the collateral. Therefore the injury was willful and, under the *Ries* rule, malicious.

The only remaining question is whether *Ries* is still good law.[1] *Ries* has not been overruled. After *Ries*, in discussing the two possible interpretations of malice, the Court of Appeals for the Seventh Circuit noted that "[t]his circuit has not taken a definitive stand on the question, and it is unnecessary for us to reach that issue of first impression here." *In re Scarlata*, 979 F.2d 521, 526 (7th Cir.1992). Two years later, the court observed that "[u]nder § 523(a)(6), of the Bankruptcy Code, willful means deliberate or intentional ... [and] malicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm."[2] *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986)). This description of malice is generally in accord with the holding in *Ries*. An intentional conversion wherein the debtor knows that injury will result is roughly equivalent to an act done "in conscious disregard of one's duties or without cause or excuse." Therefore, *Ries* re-

---

1. There is a colorable argument that the rule in *Ries* does not follow from a literal interpretation of § 523(a)(6). While the original bankruptcy code allowed for considerable judicial discretion in general, much of that discretion has been eliminated in subsequent amendments to the Code—in particular, BAPCPA.

2. This passage immediately follows the court's observation that "[w]e give effect to the words of the statute by viewing their plain meaning." *Thirtyacre* at 700. If the Court of Appeals is implying that § 523(a)(6) has a plain meaning, I respectfully disagree. The description of "malice" in *Thirtyacre* did not determine the case, nor was it carefully considered. Thus, it should be given little weight.

mains good law and determines the outcome here.

The sale of the tractor was not a conversion and thus did not injure the Store. The Store's complaint is dismissed. The sale of the collateral securing Mr. Jorenby's loan from the Bank violated the security agreement, was a conversion, and was willful and malicious. The Bank's debt is therefore excepted from discharge under 11 U.S.C. § 523(a)(6).

It may be so ordered.

### ORDER

The Court having held trials in the above captioned cases and having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED

1) That the complaint of Farmers Implement Store of Mineral Point, Inc. is DISMISSED, and

2) That the debt owed to Farmers Savings Bank shall be excepted from discharge under 11 U.S.C. § 523(a)(6).